No. 24-0034

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

SAMANTHA ALARIO, et al.,

*Plaintiffs-Appellees*,

TIKTOK INC.,

*Plaintiff-Appellee*,

v.

AUSTIN KNUDSEN, in his official capacity as Montana Attorney General,
*Defendant-Appellant.*

On Appeal from the United States District Court for the District of Montana
Case Nos. 9:23-cv-00056-DWM and 9:23-cv-00061-DWM
The Honorable Donald W. Molloy

### USER PLAINTIFFS-APPELLEES' RESPONSE BRIEF

Tim Cunningham
DAVIS WRIGHT TREMAINE LLP
560 SW 10th Avenue Suite 700
Portland, Oregon 97205
(503) 241-2300
timcunningham@dwt.com

Adam S. Sieff
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017
(213) 633-6800
adamsieff@dwt.com

Ambika Kumar
  *Counsel of Record*
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104
(206) 757-8030
ambikakumar@dwt.com

Chelsea T. Kelly
DAVIS WRIGHT TREMAINE LLP
1301 K Street NW, Suite 500 East
Washington, D.C. 20005
(202) 973-4200
chelseakelly@dwt.com

*Attorneys for Plaintiffs-Appellees\**

*Additional counsel listed on signature page.*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Plaintiff-Appellees are individuals and have nothing to disclose.

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................1

JURISDICTIONAL STATEMENT ....................................................2

ISSUES PRESENTED...........................................................................2

STATEMENT OF THE CASE...............................................................3

    A.    TikTok Facilitates Communication Among Millions of Users. .....................................................................................3

    B.    TikTok's Unique Recommendation System Allows Creators to Reach a Substantial Audience and Generate Income. ..................................................................................5

    C.    Montana Enacts SB 419 Banning TikTok. ..........................6

    D.    Plaintiffs Challenge the Constitutionality of SB 419.........7

    E.    Congress Passes a Federal Ban. ............................................9

SUMMARY OF ARGUMENT ................................................................9

STANDARD OF REVIEW ....................................................................10

ARGUMENT .........................................................................................10

    I.    The District Court Correctly Held SB 419 Likely Unconstitutional. ..................................................................10

        A.    SB 419 Violates The First Amendment.....................10

            1.    SB 419 regulates speech, not conduct. ............11

            2.    SB 419 imposes an unconstitutional prior restraint........17

            3.    SB 419's total ban on TikTok is inherently overbroad. .............................................................21

            4.    SB 419 fails constitutional scrutiny...............24

ii

          a.      SB 419 is subject to strict scrutiny. ..................... 24

          b.      SB 419 fails any level of First Amendment
                    scrutiny. ............................................... 28

              i.      The State has not shown SB 419 actually
                          serves an important state interest. ............. 29

              ii.     The State has not shown narrow
                          tailoring. .................................... 32

     B.      SB 419 Impermissibly Regulates Foreign Affairs. ................... 36

         1.      SB 419 violates the Foreign Affairs Doctrine. .............. 36

          a.      SB 419's real purpose does not concern an
                    area of traditional state responsibility. ................ 37

          b.      SB 419 intrudes on the federal government's
                    foreign affairs powers. ........................... 41

         2.      Federal law preempts SB 419. ........................ 43

     C.      SB 419 Violates The Commerce Clause. .................................. 46

  II.     The District Court Correctly Granted Injunctive Relief. .................... 49

CONCLUSION ......................................................................... 50

# TABLE OF AUTHORITIES

**Page**

**Cases**

*303 Creative LLC v. Elenis*,
    600 U.S. 570 (2023)....................................................................15, 27

*ACLU of Ill. v. Alvarez*,
    679 F.3d 583 (7th Cir. 2012) ..............................................................11

*ACLU v. Johnson*,
    194 F.3d 1149 (10th Cir. 1999) .......................................................47, 48

*Alexander v. United States*,
    509 U.S. 544 (1993).............................................................................17

*Am. Ins. Ass'n v. Garamendi*,
    539 U.S. 396 (2003)...........................................................36, 37, 39, 43

*Am. Soc'y of Journalists & Authors, Inc. v. Bonta*,
    15 F.4th 954 (9th Cir. 2021) ...............................................................13

*Anderson v. City of Hermosa Beach*,
    621 F.3d 1051 (9th Cir. 2010) .....................................................*passim*

*Arcara v. Cloud Books, Inc.*,
    478 U.S. 697 (1986)......................................................................13, 14

*Arizona v. United States*,
    567 U.S. 387 (2012)............................................................................43

*Arkansas Writers' Project, Inc. v. Ragland*,
    481 U.S. 221 (1987)..................................................................16, 24, 25

*Ashcroft v. ACLU*,
    542 U.S. 656 (2004)............................................................................26

*Ashcroft v. Free Speech Coal.*,
    535 U.S. 234 (2002)............................................................................21

iv

*Backpage.com, LLC v. McKenna*,
    881 F. Supp. 2d 1262 (W.D. Wash. 2012) ........................................................48

*Baird v. Bonta*,
    81 F.4th 1036 (9th Cir. 2023) ...........................................................................49

*Bantam Books, Inc. v. Sullivan*,
    372 U.S. 58 (1963)..............................................................................12, 19, 20

*Bartnicki v. Vopper*,
    532 U.S. 514 (2001)........................................................................1, 10, 13, 15

*Beaver v. Tarsadia Hotels*,
    816 F.3d 1170 (9th Cir. 2016) ..........................................................................40

*Berger v. City of Seattle*,
    569 F.3d 1029 (9th Cir. 2009) ....................................................................22, 23

*Bibb v. Navajo Freight Lines, Inc.*,
    359 U.S. 520 (1959)....................................................................................47, 48

*Bd. of Airport Commr's of City of Los Angeles v. Jews for Jesus, Inc.*,
    482 U.S. 569 (1987)....................................................................................22, 23

*Boos v. Barry*,
    485 U.S. 312 (1988).........................................................................................26

*Boy Scouts of Am. v. Dale*,
    530 U.S. 640 (2000).........................................................................................28

*Brown v. Ent. Merchs. Ass'n*,
    564 U.S. 786 (2011)...................................................................................10, 29

*BSA, Inc. v. King County*,
    804 F.2d 1104 (9th Cir. 1986) ....................................................................22, 23

*Buckley v. Valeo*,
    424 U.S. 1 (1976)............................................................................................12

*Cal. Chamber of Com. v. Council for Educ. & Rsch. on Toxics*,
    29 F.4th 468 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 1749 (2023) .............49, 50

v

*Carroll v. Princess Anne*,
393 U.S. 175 (1968)....................................................19

*Center for Bio-Ethical Reform, Inc. v. City & County of Honolulu*,
455 F.3d 910 (9th Cir. 2006) ......................................35

*Citizens United v. FEC*,
558 U.S. 310 (2010)....................................................14

*City of Ladue v. Gilleo*,
512 U.S. 43 (1994)........................................11, 22, 35

*City of Los Angeles v. Alameda Books, Inc.*,
535 U.S. 425 (2002)....................................................42

*City of Los Angeles v. Taxpayers for Vincent*,
466 U.S. 789 (1984)..............................................23, 24

*Craig v. Harney*,
331 U.S. 367 (1947)....................................................19

*Crosby v. NFTC*,
530 U.S. 363 (2000)..............................................44, 45

*D.O. by & through Walker v. Escondido Union Sch. Dist.*,
59 F.4th 394 (9th Cir. 2023) .......................................11

*Doe v. Harris*,
772 F.3d 563 (9th Cir. 2014) ................................14, 25

*Edwards v. City of Coeur d'Alene*,
262 F.3d 856 (9th Cir. 2001) ......................................34

*Elrod v. Burns*,
427 U.S. 347 (1976)....................................................49

*FEC v. Cruz*,
596 U.S. 289 (2022)....................................................30

*Freedman v. Maryland*,
380 U.S. 51 (1965)......................................................21

*Frisby v. Schultz*,
487 U.S. 474 (1988)............................................................23

*Greater New Orleans Broad. Ass'n, Inc. v. United States*,
527 U.S. 173 (1999)............................................................32

*Green v. Miss USA, LLC*,
52 F.4th 773 (9th Cir. 2022),
*reh'g en banc denied*, 61 F.4th 1095 (9th Cir. 2023) ..................12, 28

*Grosjean v. Am. Press Co.*,
297 U.S. 233 (1936)............................................................18

*Haaland v. Brackeen*,
599 U.S. 255 (2023)............................................................43

*HomeAway.com, Inc. v. City of Santa Monica*,
918 F.3d 676 (9th Cir. 2019) ..............................................13

*Honeyfund.com Inc. v. Governor*,
94 F.4th 1272 (11th Cir. 2024) ...........................................17

*IMDb.com Inc. v. Becerra*,
962 F.3d 1111 (9th Cir. 2020) .............................................25

*Interpipe Contracting, Inc. v. Becerra*,
898 F.3d 879 (9th Cir. 2018) ..............................................13

*Interstate Circuit v. City of Dallas*,
390 U.S. 676 (1968)............................................................20

*Jacobs v. Clark Cnty. School District*,
526 F.3d 419 (9th Cir. 2008) ..............................................35

*Junior Sports Mags. Inc. v. Bonta*,
80 F.4th 1109 (9th Cir. 2023) ...................................10, 29, 30, 31

*Klein v. City of San Clemente*,
584 F.3d 1196 (9th Cir. 2009) ........................................30, 50

*Kyocera Document Sols. Am., Inc. v. Div. of Admin.*,
-- F. Supp. 3d. --, 2023 WL 8868837 (D.N.J. Dec. 22, 2023)............39

*Lamont v. Postmaster Gen.*,
    381 U.S. 301 (1965) ............................................................26

*Landmark Commc'ns, Inc. v. Virginia*,
    435 U.S. 829 (1978) ............................................................19

*Leathers v. Medlock*,
    499 U.S. 439 (1991) ............................................................16

*Linmark Assocs., Inc. v. Township of Willingboro*,
    431 U.S. 85 (1977) ..............................................................34

*Lone Star Security & Video, Inc. v. City of Los Angeles*,
    827 F.3d 1192 (9th Cir. 2016) .....................................26, 27

*Lovell v. City of Griffin*,
    303 U.S. 444 (1938) ............................................................22

*Mahanoy Area Sch. Dist. v. B.L.*,
    594 U.S. 180 (2021) ............................................................35

*Matal v. Tam*,
    582 U.S. 218 (2017) ............................................................28

*McConnell v. FEC*,
    540 U.S. 93 (2003) ..............................................................15

*McCullen v. Coakley*,
    573 U.S. 464 (2014) ............................................................34

*Minneapolis Star & Trib. Co. v. Minn. Comm'r of Rev.*,
    460 U.S. 575 (1983) .............................................15, 16, 25

*Movsesian v. Victoria Versicherung AG*,
    670 F.3d 1067 (9th Cir. 2012) ................................*passim*

*NAACP v. Button*,
    371 U.S. 415 (1963) ............................................................12

*Nat'l Ass'n of Wheat Growers v. Bonta*,
    85 F.4th 1263 (9th Cir. 2023) ...........................................29

*Nat'l Pork Producers Council v. Ross*,
    598 U.S. 356 (2023)..................................................................46, 47

*Near v. Minnesota*,
    283 U.S. 697 (1931)..................................................................12, 18

*Neb. Press Ass'n v. Stuart*,
    427 U.S. 539 (1976)..........................................................................18

*N.Y. Times Co. v. Sullivan*,
    376 U.S. 254 (1964)..........................................................................15

*N.Y. Times Co. v. United States*,
    403 U.S. 713 (1971)..........................................................15, 19, 20

*Nunez by Nunez v. City of San Diego*,
    114 F.3d 935 (9th Cir. 1997) ............................................................13, 14

*Odebrecht Constr., Inc. v. Sec'y, Fla. Dep't of Transp.*,
    715 F.3d 1268 (11th Cir. 2013) ...........................................................44

*Packingham v. North Carolina*,
    582 U.S. 98 (2017)..........................................................................23, 33

*Pike v. Bruce Church, Inc.*,
    397 U.S. 137 (1970)....................................................................2, 46, 47

*PSINet, Inc. v. Chapman*,
    362 F.3d 227 (4th Cir. 2004) ............................................................47, 48

*Publius v. Boyer-Vine*,
    237 F. Supp. 3d 997 (E.D. Cal. 2017) .............................................................48

*Real v. City of Long Beach*,
    852 F.3d 929 (9th Cir. 2017) ............................................................14, 18

*Reed v. Town of Gilbert*,
    576 U.S. 155 (2015)................................................................15, 24, 26, 27

*Reno v. ACLU*,
    521 U.S. 844 (1997)............................................................................*passim*

ix

*Republican Party of N.M. v. Torrez*,
-- F. Supp. 3d --, 2023 WL 5310645 (D.N.M. Aug. 17, 2023) .........................42

*Rosen v. Port of Portland*,
641 F.2d 1243 (9th Cir. 1981) .......................................................20, 21

*Rubin v. Coors Brewing Co.*,
514 U.S. 476 (1995).....................................................................32

*Se. Promotions, Ltd. v. Conrad*,
420 U.S. 546 (1975).....................................................18, 19, 20, 21

*Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*,
502 U.S. 105 (1991).....................................................................15

*Smith v. California*,
361 U.S. 147 (1959).....................................................................15

*Smith v. Daily Mail Publ'g Co.*,
443 U.S. 97 (1979).......................................................................19

*Sorrell v. IMS Health Inc.*,
564 U.S. 552 (2011)..........................................................10, 13, 15

*SPGGC, LLC v. Blumenthal*,
505 F.3d 183 (2d Cir. 2007) ........................................................48

*Spirit of Aloha Temple v. County of Maui*,
49 F.4th 1180 (9th Cir. 2022) ................................................14, 16

*Sullivan v. Univ. of Wash.*,
60 F.4th 574 (9th Cir. 2023) ............................................10, 36, 47

*Talk of the Town v. City of Las Vegas*,
343 F.3d 1063 (9th Cir. 2003) ......................................................14

*Telescope Media Grp. v. Lucero*,
936 F.3d 740 (8th Cir. 2019) .......................................................17

*Turner Broad. Sys., Inc. v. FCC*,
512 U.S. 622 (1994)...............................................................*passim*

*Twitter, Inc. v. Garland*,
    61 F.4th 686 (9th Cir. 2023),
    *cert. denied sub nom.*, 144 S. Ct. 556 (2024) ...............................19, 24

*U.S. WeChat Users All. v. Trump*,
    488 F. Supp. 3d 912 (N.D. Cal. 2020) ................................................18

*United Bhd. of Carpenters & Joiners of Am. Loc. 586 v. NLRB*,
    540 F.3d 957 (9th Cir. 2008) ...............................................................34

*United States v. Grace*,
    461 U.S. 171 (1983)...............................................................................25

*United States v. O'Brien*,
    391 U.S. 367 (1968)........................................................................27, 28

*United States v. Playboy Ent. Grp.*,
    529 U.S. 803 (2000)........................................................................28, 30

*United States v. Stevens*,
    559 U.S. 460 (2010)........................................................................22, 23

*Va. State Bd. of Pharm. v. Va. Citizens Consumer Council, Inc.*,
    425 U.S. 748 (1976)...............................................................................15

*Video Gaming Techs., Inc. v. Bureau of Gambling Control*,
    356 F. App'x 89 (9th Cir. 2009) ..........................................................49

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
    592 F.3d 954 (9th Cir. 2010) ...........................................37, 38, 39, 42

*Ward v. Rock Against Racism*,
    491 U.S. 781 (1989)...............................................................26, 32, 34

*Where Do We Go Berkeley v. Cal. Dep't of Transp.*,
    32 F.4th 852 (9th Cir. 2022) ...............................................................10

*Yim v. City of Seattle*,
    63 F.4th 783 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 693 (2024) ....................29

*Zepeda v. U.S. INS*,
    753 F.2d 719 (9th Cir. 1983) ...............................................................49

*Ziglar v. Abbasi*,
    582 U.S. 120 (2017)..................................................................................29

*Zschernig v. Miller*,
    389 U.S. 429 (1968)..................................................................37, 42, 43

**Statutes**

50 U.S.C.
    § 1701.........................................................................................................7
    § 4565...............................................................................................*passim*

California Civil Code § 1798.100.......................................................................33

Protecting Americans from Foreign Adversary Controlled Applications Act,
    H.R. 815, div. D, 118th Cong., Pub. L. No. 118-50
    (Apr. 24, 2024)..............................................................9, 38, 43, 45, 46

**Regulations**

15 C.F.R. § 7.4 ...........................................................................................6, 39

**Other Authorities**

Al-Amyn Sumar, *Prior Restraints and Digital Surveillance*,
    20 YALE J. L. & TECH. 74 (2018)........................................................19

Rodney A. Smolla, FREE SPEECH IN AN OPEN SOCIETY (1992) .................................1

Rodney A. Smolla, *Why the SEC Gag Rule Silencing Those Who Settle SEC
    Investigations Violates the First Amendment*,
    29 WIDENER L. REV. 1 (2023)..............................................................19

TikTok, *Response to TikTok Ban Bill* (Apr. 24, 2024),
    https://tinyurl.com/44aurw2b..................................................................9

## INTRODUCTION

The Act Banning TikTok in Montana (SB 419) shutters an entire medium for communication, an act of censorship that prohibits thousands of Montanans from engaging in protected speech. The district court properly enjoined its enforcement.

First, the district court correctly held that the Act likely violates the First Amendment. Proving that "[n]o law abridging freedom of speech is ever promoted as a law abridging freedom of speech," Rodney A. Smolla, FREE SPEECH IN AN OPEN SOCIETY 58 (1992), the State claims SB 419 regulates "conduct." *See* Br. 24-34. But what SB 419 regulates is the publication and consumption of content. *Bartnicki v. Vopper*, 532 U.S. 514, 527 (2001). The Act is an impermissible prior restraint, profoundly overbroad, and a content- and speaker-based restriction. It is subject to strict constitutional scrutiny, but it cannot survive even the intermediate scrutiny the district court applied. Montana cannot ban TikTok to advance its view of United States foreign policy or to prevent publication of allegedly objectionable content. To the extent Montana asserts the law is meant to protect consumers, the State could achieve that goal without torching free expression, such as by enforcing or expanding its recently passed data privacy law.

Second, the district court correctly held that SB 419 likely regulates foreign affairs in violation of the Constitution and other federal law. SB 419 explicitly addresses perceived Chinese state aggression, intruding upon the federal

1

government's exclusive authority to manage international relations. The Act also impermissibly conflicts with Section 721 of the Defense Production Act (DPA), 50 U.S.C. § 4565, which vests exclusive authority over foreign investment proceedings to the President and Committee on Foreign Investment in the United States (CFIUS). And SB 419 is also preempted by Congress's recently enacted nationwide TikTok ban—one that does not (like Montana's) take effect immediately, and one that imposes different conditions for the continued operation of TikTok.

Third, the district court correctly held SB 419 likely violates the Commerce Clause. The State concedes the Act impedes the flow of interstate commerce, and as the district found, has no evidence its burdens are justified by any legitimate local benefits, as required by *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).

Any of these reasons suffice to affirm the injunction, which is necessary to avert irreparable injuries to Plaintiffs and the public. The Court should affirm.

## JURISDICTIONAL STATEMENT

Plaintiffs agree with the State's jurisdictional statement.

## ISSUES PRESENTED

1.     Whether the district court correctly held Plaintiffs are likely to succeed on their claim that SB 419 violates the First Amendment.

2.     Whether the district court correctly held Plaintiffs are likely to succeed on their claim that SB 419 impermissibly regulates foreign affairs (a) in violation of

the United States Constitution, and (b) in conflict with federal law.

3.     Whether the district court correctly held Plaintiffs are likely to succeed on their claim that SB 419 violates the Commerce Clause.

4.     Whether the district court correctly held that Plaintiffs are entitled to preliminary injunctive relief.

## STATEMENT OF THE CASE

### A.     TikTok Facilitates Communication Among Millions of Users.

TikTok allows users, i.e. content creators and viewers, to create, share, and watch videos of up to ten minutes[1] and provides them tools to amplify their expression, such as background music and filters.[2]  As long as they are old enough, users can comment on, like, and share videos; stream content live; and message each other.[3]  Creators, who create the content posted to TikTok, post videos on myriad topics, such as art, science, comedy, pets, cooking, music, photography, travel and tourism, psychology, agriculture, politics, and current events.  More than one billion people use TikTok,[4] including, as of March 2023, over 150 million Americans.

Plaintiff Carly Ann Goddard shares scenes of her life on a Montana ranch on TikTok and uses the platform to meet new people.  ER-59 ¶¶ 2, 4.  Plaintiff Alice

---

[1] SER-67–68.

[2] *See* SER-70.

[3] *See* SER-73 (TikTok, *Messaging and Notifications* (June 27, 2023)).

[4] SER-76 (TikTok, Thanks a Billion! (Sept. 27, 2021)).

Held posts videos from mountain-climbing adventures and "went 'viral'" when she shared her month-long experience camping during the pandemic. SER-167 ¶ 3. Plaintiff Samantha Alario uses TikTok to promote her sustainable swimwear company and learn about topics ranging from investing to fitness. SER-171–72 ¶¶ 5, 7. Plaintiff Heather DiRocco connects with other veterans to discuss issues like mental health and suicide prevention. ER-54 ¶ 8. Plaintiff Dale Stout connects with and supports a community of people from around the world, learns new ideas, and follows current events. SER-162–63 ¶¶ 3-4, 7.

Stout is not alone. Nearly thirty percent of all major-party U.S. Senate candidates have TikTok accounts, as do twenty percent of all major-party House candidates.[5] Politicians use TikTok to reach young voters, activate new voters, and break out as candidates.[6] For example, Montana State Senator Ken Bogner has a TikTok account (@kenbogner) that "[s]how[s] off the great state of Montana."[7] Montana State Representative Zooey Zephyr uses her account (@zoandbehold) to

---

[5] *See* SER-79–82 (Cat Zakrzewski et al., *As midterms loom, TikTok faces its next political test*, Wash. Post (Oct. 31, 2022), https://tinyurl.com/23m4dtu7).

[6] *See, e.g.*, SER-84–89 (Anna P. Kambhampaty, *Securing the TikTok Vote*, N.Y. Times (Mar. 19, 2022), https://tinyurl.com/mr3vrf2e); *see also* SER-91–92 (Josh Robin & Rachel Tillman, *Views to votes: Candidates employ TikTok to spread political message ahead of midterms*, Spectrum News (Sept. 22, 2022), https://tinyurl.com/3z3r54vh).

[7] *See* SER-94 (Ken Bogner (@kenbogner), TikTok (last visited June 27, 2023), https://www.tiktok.com/@kenbogner).

provide regular legislative updates.[8]

### B. TikTok's Unique Recommendation System Allows Creators to Reach a Substantial Audience and Generate Income.

Many creators, including Plaintiffs, choose TikTok because it inspires users to explore new content, not just follow friends, family, celebrities, or influencers. ER-55 ¶ 11. TikTok's "For You" page provides a curated stream of new videos.[9] Even little-known creators can gain substantial "organic reach," exposing their content to viewers beyond their current followers.[10] As one analyst explained: "TikTok offers the broadest organic reach of any of the channels right now."[11]

Plaintiffs have found greater success on TikTok than other social media apps. DiRocco has about ten times as many followers on TikTok (over 200,000) than Instagram (23,500). ER-55 ¶ 11. Goddard has over 101,000 followers on TikTok and 157 followers on YouTube. ER-61 ¶ 9. Held has over 216,000 followers on TikTok and about 7,000 on Instagram. SER-168 ¶ 5. Stout has stopped posting on

---

[8] *See* SER-96 (Zooey Zephyr (@zoeandbehold), TikTok (last visited June 27, 2023), https://www.tiktok.com/@zoandbehold).

[9] *See* SER-98–99 (TikTok, *How TikTok Recommends Videos #ForYou* (June 18, 2020), https://tinyurl.com/8nhhert3).

[10] SER-222 ¶ 16; *see also* SER-102–04 (Alexandra Garfinkle, *TikTok: Are influencers panicking about bans? We asked three to weigh in.,* Yahoo! Fin. (Jan. 19, 2023), https://tinyurl.com/22h7rtvx).

[11] SER-106–08 (Jaimie Ding, *TikTok has created small business success stories and fast-tracked American dreams*, Trib. News, published by Dallas News (Mar. 28, 2023), https://tinyurl.com/3j4rzyxw).

5

Instagram in favor of TikTok.  SER-163 ¶ 8.

Many Montanans, including several Plaintiffs, rely on income generated on TikTok.  For example, Goddard roughly tripled her family's income through TikTok.  ER-60 ¶ 7.  DiRocco generates ten to thirty percent of her income from TikTok content.  ER-53–54 ¶ 7.  Alario uses TikTok to save advertising costs while marketing her company and has seen her local business grow.  SER-171–72 ¶¶ 5-6.

### C.    Montana Enacts SB 419 Banning TikTok.

Initially scheduled to take effect January 1, 2024, SB 419 bans TikTok in Montana.  *See* ER-64–65 §§ 1, 5.  It imposes a $10,000 fine on the company and app stores each time a user accesses TikTok in Montana, and $10,000 more each day violations continue.  ER-64 §§ 1(2), 7(a)-(b).

The Legislature identified two interests purportedly justifying the law.  *See* ER-24–25.  First, SB 419 purports to protect Montanans from "the People's Republic of China" and the "Chinese Communist Party" because TikTok allegedly enables those entities "to conduct corporate and international espionage."  ER-63–64; *see also* ER-65 § 4 (law void if TikTok "is acquired by or sold to a company that is not incorporated in any other country designated as a foreign adversary in 15 C.F.R. [§] 7.4").[12]  In legislative testimony, Attorney General Knudsen, who wrote the law,

---

[12] Section 7.4 lists these "adversaries," which include China, Cuba, Iran, North Korea, Russia, and Venezuela.  15 C.F.R. § 7.4(a)(1)-(6).

ER-20, claimed China uses TikTok to "spy on Americans," and that he supported the law because "there's no guarantee that the feds are actually going to act here."[13] Second, the Act states that TikTok hosts "dangerous content" that allegedly encourages "minors to engage in dangerous activities." ER-63. When asked, the Attorney General provided purported examples.[14]

The State intended to enforce SB 419, even though the Attorney General admitted that the Act may require a decision from the U.S. Supreme Court on the Act's "full legal implications."[15]

### D. Plaintiffs Challenge the Constitutionality of SB 419.

Plaintiffs challenged SB 419 before it took effect, alleging it violates the First Amendment and the Due Process and Commerce Clauses of the United States Constitution, and is preempted by Section 721 of the Defense Production Act, 50 U.S.C. § 4565 (DPA) and the International Emergency Economic Powers Act, 50 U.S.C. § 1701 *et seq.* (IEEPA). The company also brought its own suit, and the

---

[13] *See* SER-270–73; *see also* SER-296 (SB 419 author: Montana needs "to send a message to other states and to Congress"); SER-110–11 (Fran Beyer, *Mont. AG Knudsen to Newsmax: State Tik Tok Ban First of Its Kind*, Newsmax (Apr. 17, 2023), https://tinyurl.com/2udczzm6) (Attorney General: "pushing back against the Chinese communist government" is "what this is about"); SER-260 (claiming TikTok is a "propaganda tool" for the Chinese Communist Party).

[14] SER-270–71; *see also, e.g.*, SER-255 (claiming TikTok shows you more depressing videos "[i]f you're depressed"); SER-260 (claiming TikTok is a "propaganda tool" for the Chinese Communist Party).

[15] SER-277.

actions were consolidated.

The district court granted Plaintiffs' motion for preliminary injunction. *See* ER-3–50. It held the law regulates speech protected by the First Amendment by "banning a means of expression used by over 300,000 Montanans," depriving Plaintiffs of the chance to "communicat[e] by their preferred means." ER-16–17 (citation omitted). Concluding the Act does not likely survive intermediate scrutiny, the court did not decide whether the ban was subject to stricter scrutiny. ER-21.

The district court also held the Foreign Affairs Doctrine of the United States Constitution likely preempts SB 419 under the doctrine of field preemption because the Act's real purpose is to "establish a foreign policy for Montana," intruding on the federal government's "exclusive power to conduct and regulate foreign affairs." ER-39 (citation omitted); ER-40. The district court further found the Act likely preempted by Section 721 of the DPA because it presents an obstacle to negotiations between the federal government and the company. *See* ER-41–43. The district court then found that the burdens of the Act on interstate commerce were not likely outweighed by evidence of SB 419's putative local benefits, ER-46–47, and that the law also likely violated the Commerce Clause by regulating foreign commerce, ER-47. Having concluded that Plaintiffs were likely to prevail on the merits, the district court found Plaintiffs satisfied the remaining factors for preliminary injunctive relief, and issued a preliminary injunction. ER-47–50.

This appeal followed.

### E.     Congress Passes a Federal Ban.

On April 24, 2024, while this appeal was pending, President Biden signed the Protecting Americans from Foreign Adversary Controlled Applications Act, H.R. 815, div. D, 118th Cong., Pub. L. No. 118-50 (Apr. 24, 2024) ("Federal Ban"). That law presumptively bans TikTok from operating within the United States beginning 270 days after its enactment, unless the President approves a "qualified divestiture" of TikTok to a company not controlled by a "foreign adversary." TikTok's CEO has announced the company's intent to challenge the Federal Ban. *See* TikTok, *Response to TikTok Ban Bill* (Apr. 24, 2024), https://tinyurl.com/44aurw2b.

## SUMMARY OF ARGUMENT

SB 419 violates the First Amendment; regulates foreign affairs in violation of the United States Constitution and federal law; and impedes the flow of interstate commerce in violation of the Commerce Clause. This Court should affirm the district court's decision.

## STANDARD OF REVIEW

This Court reviews a preliminary injunction for an abuse of discretion, evaluating the district court's legal conclusions de novo and its factual findings for clear error. *See Sullivan v. Univ. of Wash.*, 60 F.4th 574, 578 (9th Cir. 2023). Whether factual findings satisfy the First Amendment is a legal conclusion reviewed de novo. *Junior Sports Mags. Inc. v. Bonta*, 80 F.4th 1109, 1115 (9th Cir. 2023).

## ARGUMENT

The district court was correct—and certainly did not abuse its discretion—in granting a preliminary injunction. Plaintiffs established more than "serious questions on the merits" in the trial court and would suffer irreparable harm absent the injunction. *Where Do We Go Berkeley v. Cal. Dep't of Transp.*, 32 F.4th 852, 860 (9th Cir. 2022). Equity and the public interest favor the injunction, *id.*, which this Court should affirm.

## I.      The District Court Correctly Held SB 419 Likely Unconstitutional.

### A.      SB 419 Violates The First Amendment.

The First Amendment protects "the creation and dissemination of information," *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011) (citing *Bartnicki*, 532 U.S. at 527), as well as the consumption of speech, *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 792 n.1 (2011). Its protections apply fully to speech made through online services. *Reno v. ACLU*, 521 U.S. 844, 870 (1997).

10

The district court held SB 419 likely fails even intermediate First Amendment scrutiny because it bans an entire means of communication without evidence that doing so materially advances a legitimate state interest, restricts no more speech than necessary, or leaves open equally effective alternative channels for expression. *See* ER-24–33. Although this Court may affirm on that basis, *see infra* Part I.A.4.b, the Court should also hold the Act violates First Amendment prohibitions against prior restraints and overbreadth, and is subject to and fails at least strict scrutiny, as it targets a single forum and group of speakers for disfavored treatment. *See infra* Parts I.A.2-3, 4a.[16] The district court's findings and reasoning support this result.

### 1. SB 419 regulates speech, not conduct.

The State claims banning TikTok only regulates conduct, not Plaintiffs' speech or expression. *See* Br. 24-34. This false premise infects the State's entire argument, and once debunked, dooms its defense of the Act.

That SB 419 regulates speech cannot be seriously disputed. The law bans "a means of expression" on which Plaintiffs rely, ER-16, and thus "inevitably affects communication itself." *City of Ladue v. Gilleo*, 512 U.S. 43, 48 (1994); *see also ACLU of Ill. v. Alvarez*, 679 F.3d 583, 595-97, 602 (7th Cir. 2012) (First Amendment

---

[16] The State claims (Br. 24-25 n.29) Plaintiffs were required to cross-appeal the district court's decision not to apply these other doctrines, but Plaintiffs may urge affirmance on "any ground supported by the record." *D.O. by & through Walker v. Escondido Union Sch. Dist.*, 59 F.4th 394, 407 (9th Cir. 2023) (citation omitted).

applied to law targeting communication technology integral to facilitating speech) (citing *Buckley v. Valeo*, 424 U.S. 1, 19 (1976)).

The State's insistence that Plaintiffs' use of TikTok to create, view, and interact with videos is not speech does not make it so. *Green v. Miss USA, LLC*, 52 F.4th 773, 780 (9th Cir. 2022), *reh'g en banc denied*, 61 F.4th 1095 (9th Cir. 2023). Courts must "look through forms to the substance" of a regulation to assess the First Amendment's application. *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 67 (1963); *see also NAACP v. Button*, 371 U.S. 415, 429 (1963) (rejecting the government's characterization of a speech regulation). Calling a publication a "business" and the publisher's service a "dangerous product," for example, does not render the First Amendment inapplicable. *Near v. Minnesota*, 283 U.S. 697, 720 (1931). Here, the conduct SB 419 bans is, in the State's words, the "transmi[ssion of] expressive videos," through a particular medium, Br. 26, and its regulation requires First Amendment scrutiny. *See Reno*, 521 U.S. at 870; *see also Anderson v. City of Hermosa Beach*, 621 F.3d 1051, 1061-62 (9th Cir. 2010) (First Amendment protects "[t]he process of expression through a medium").

The State glosses over this analysis. What it calls the "pertinent question"—whether SB 419 "targets conduct with a significant expressive element," Br. 28 (citation omitted)—skips the threshold issue: determining whether the targeted conduct *is* speech itself. Courts only assess whether conduct contains an expressive

element if the challenged regulation exclusively restricts *non-expressive* activity, like the classification of an employment relationship, *Am. Soc'y of Journalists & Authors, Inc. v. Bonta*, 15 F.4th 954, 961 (9th Cir. 2021), booking home rental transactions, *HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676, 684 (9th Cir. 2019), or the payment of wages, *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 895 (9th Cir. 2018). Where a law directly restricts when, where, or how someone can speak, it regulates speech, not conduct. *Am. Soc'y*, 15 F.4th at 961. The Supreme Court made this clear in *Bartnicki*, explaining that the "acts of disclosing and publishing information … constitute speech."  532 U.S. at 527 (citation omitted).

That is what SB 419 restricts. By prohibiting the operation and use of TikTok, ER-64 § 1(1)(a), SB 419 bans the creation and dissemination of information and thus regulates speech. *Sorrell*, 564 U.S. at 570 (rejecting argument that sales, transfer, and use of prescriber-identifying information are conduct, not speech). As the district court succinctly explained, SB 419 regulates speech because it bans "a 'means of expression' used by over 300,000 Montanans." ER-16 (citation omitted).

*Arcara v. Cloud Books, Inc.*, 478 U.S. 697 (1986) (discussed Br. 24-34), is consistent with this conclusion. As this Court has explained, *Arcara* applied the significant expressive element test because the plaintiffs challenged conduct, not speech. *See Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 950 (9th Cir. 1997);

13

*see also Talk of the Town v. City of Las Vegas*, 343 F.3d 1063, 1069 (9th Cir. 2003) (cited Br. 25) (citing and applying *Nunez*).  The *Arcara* court held that enforcing a general nuisance ordinance against a bookstore's complicit participation in illegal prostitution regulated conduct "having nothing to do with books or other expressive activity."  478 U.S. at 704-05, 707.  It only then assessed whether the bookstore's participation had a significant expressive element.  *See id.* at 704-07.  SB 419, in contrast, directly regulates speech by singling out and banning a specific communication service for publishing content in a way the State deems dangerous. *Doe v. Harris*, 772 F.3d 563, 572-73 (9th Cir. 2014) (distinguishing *Arcara,* applying First Amendment to law regulating use of online services); *see also Spirit of Aloha Temple v. County of Maui*, 49 F.4th 1180, 1191 (9th Cir. 2022) (distinguishing *Arcara*, applying First Amendment to zoning ordinance).

The State is also wrong that SB 419 does not regulate Plaintiffs' speech on the basis that it does not impose penalties on them.  Plaintiffs' injury from SB 419 is not the risk of liability for violating the law, but the loss of a method of expression. *Anderson*, 621 F.3d at 1068 (ban on tattooing violated artist's First Amendment right to engage in "method of expression"); *see also Real v. City of Long Beach*, 852 F.3d 929, 935 (9th Cir. 2017) (similar ordinance restricted artist's right to engage in "means of expression").  This is because the First Amendment protects all aspects of the speech process, *Citizens United v. FEC*, 558 U.S. 310, 336 (2010), from its

14

source, to the communication itself, to its recipients, *Va. State Bd. of Pharm. v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 756 (1976). Laws restricting distributors of others' expression thus affect the rights of the public who depend on them. *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279 (1964) (quoting *Smith v. California*, 361 U.S. 147, 154 (1959)). "License printers, and it matters little whether authors are still free to write. Restrict the sale of books, and it matters little who prints them." *McConnell v. FEC*, 540 U.S. 93, 251 (2003) (Scalia, J., concurring in part and dissenting in part).

The State's contention that the law does not regulate speech because some of its putative justifications are unrelated to the suppression of speech (Br. 33-34 & n. 31) also fails. Because "[i]nnocent motives do not eliminate the danger of censorship," application of the First Amendment turns upon the operation of the law itself. *Reed v. Town of Gilbert*, 576 U.S. 155, 167 (2015); *see also Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105, 117 (1991) (no improper motive needed). The First Amendment applies to all laws restraining speech, even those putatively serving non-expressive ends. *See, e.g.*, *303 Creative LLC v. Elenis*, 600 U.S. 570, 592, 602-03 (2023) (anti-discrimination); *Sorrell*, 564 U.S. at 564-66, 570-72 (data privacy); *Bartnicki*, 532 U.S. at 526-27 (privacy); *Minneapolis Star & Trib. Co. v. Minn. Comm'r of Rev.*, 460 U.S. 575, 592 (1983) (taxation); *N.Y. Times Co. v. United States*, 403 U.S. 713, 714 (1971) ("*Pentagon*

15

*Papers*") (national security). This makes good sense. If the First Amendment could be neutralized by the government's stated concerns, *cf.* Br. 34, governments could restrict speech with impunity by manufacturing conduct-based aims unrelated to censorship. That is not the law. *See, e.g.*, *Spirit of Aloha Temple*, 49 F.4th at 1191 (irrelevant that law was meant to be unrelated to speech).

The State's other principal authorities are inapposite. In *Leathers v. Medlock*, 499 U.S. 439 (1991), the Supreme Court declined to apply the First Amendment to an Arkansas cable tax, but only because the tax applied uniformly to approximately 100 cable systems, not just a small group of publishers. *Id.* at 447-49. By contrast, SB 419 is a "deliberate and calculated device to penalize" not just a certain group of speakers, but a *single forum*. *Id.* at 452-53 (citation omitted). SB 419 is the kind of publisher-targeted regulation that *Leathers* distinguished and is thus subject to the same First Amendment analysis applied in *Minneapolis Star*, 460 U.S. at 592 ("potential for abuse" enough to trigger First Amendment) and *Arkansas Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 228 (1987) (no evidence of improper motive necessary to apply First Amendment).

The State's reliance on *Turner Broadcasting System, Inc. v. FCC*, 512 U.S. 622, 660-61 (1994) (Br. 32-34), is especially confounding as that case *applied* the First Amendment. The passage the State cites explains the Supreme Court's rationale for applying intermediate rather than strict scrutiny to the

Telecommunication Act's requirements that cable operators carry certain broadcast stations, and even in that respect, turned on unique traits of the cable medium that gave cable operators "bottleneck monopoly power" to destroy competition. *Id.* at 661; *see also Reno*, 521 U.S. at 868-70 (distinguishing *Turner*, finding no basis to qualify First Amendment protections online). There was no question the First Amendment limited the government's ability to regulate cable operators, and the decision confirmed that narrowly targeted regulations affecting "just a select few" operators of other media would have not only justified First Amendment scrutiny, but strict scrutiny. *Turner*, 512 U.S. at 661; *see infra* Part I.A.4.

*  *  *

"Speech is not conduct just because the government says it is." *Telescope Media Grp. v. Lucero*, 936 F.3d 740, 752 (8th Cir. 2019). If anything, experience teaches that "hiding speech restrictions in conduct rules is not only a dubious constitutional enterprise" but a "losing constitutional strategy." *Honeyfund.com Inc. v. Governor*, 94 F.4th 1272, 1278 (11th Cir. 2024) (citation omitted). So too here. The First Amendment applies to SB 419, which does not withstand scrutiny.

### 2.    SB 419 imposes an unconstitutional prior restraint.

Although the district court properly held the ban likely violates the First Amendment, it erroneously declined to classify the Act as a prior restraint. A prior restraint forbids communications before they occur. *Alexander v. United States*, 509

17

U.S. 544, 550 (1993). Prior restraints present "the most serious and the least tolerable infringement on First Amendment rights," and bear a "heavy presumption" against their validity. *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 558-59 (1976) (citation omitted).

SB 419 imposes a quintessential prior restraint. By shuttering TikTok, the law gives the State "power to deny use of a forum in advance of actual expression." *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 553 (1975). It even more broadly restrains speech than the invalidated order in *Near*, 283 U.S. at 703-05, which enjoined publication of a single newspaper, or the impermissible law in *Grosjean v. American Press Co.*, 297 U.S. 233, 240-41, 249-51 (1936), which subjected a select group of newspapers to a special tax. Like an ordinance banning tattooing without government permission, SB 419 shuts down an entire "means of expression." *Real*, 852 F.3d at 935; *see also, e.g.*, *U.S. WeChat Users All. v. Trump*, 488 F. Supp. 3d 912, 926 (N.D. Cal. 2020) (ban on Chinese-owned communications app imposed equivalent of prior restraint). The harms here are amplified because TikTok, as an online medium, permits Plaintiffs to communicate with hundreds of millions of individuals at once. *See Reno*, 521 U.S. at 870.

Although the district court found that alternative platforms might be available, ER 23, that does not justify a prior restraint. *Se. Promotions*, 420 U.S. at 556. "One is not to have the exercise of his liberty of expression in appropriate places abridged

on the theory that it may be exercised in some other place." *Id.* (citation omitted) (prohibiting performance was prior restraint despite alternative venues); *see also Bantam Books*, 372 U.S. at 66-67, 70 (law was invalid prior restraint even though publishers could distribute titles through other means).

SB 419 does not survive the scrutiny applicable to prior restraints, *Smith v. Daily Mail Publ'g Co.*, 443 U.S. 97, 102 (1979), a more stringent standard than even strict scrutiny that requires showing the Act is the *only* means to address a "direct, immediate, and irreparable" interest of the highest magnitude, *Pentagon Papers*, 403 U.S. at 730 (Stewart, J., concurring); *id.* at 726-27 (Brennan, J., concurring) (same).[17]   Seeking to avert even *probable* danger is not enough. *See Craig v. Harney*, 331 U.S. 367, 376 (1947).   The evidence must show the danger is immediate. *See Landmark Commc'ns, Inc. v. Virginia*, 435 U.S. 829, 845 (1978). Even then, the restraint must be essential to accomplish its objective. *See Carroll v. Princess Anne*, 393 U.S. 175, 183 (1968).  "Any 'prior restraint,' therefore, must be

---

[17] Although this Court has held this standard identical to ordinary strict scrutiny, *e.g.*, *Twitter, Inc. v. Garland*, 61 F.4th 686, 698 (9th Cir. 2023), *cert. denied sub nom. X Corp. v. Garland*, 144 S. Ct. 556 (2024), "the outcomes of prior restraint cases, and the language in those cases employed to condemn prior restraints, suggest a coloration even more rigorous than strict scrutiny."   Rodney A. Smolla, *Why the SEC Gag Rule Silencing Those Who Settle SEC Investigations Violates the First Amendment*, 29 WIDENER L. REV. 1, 6-7 (2023); *see also* Al-Amyn Sumar, *Prior Restraints and Digital Surveillance*, 20 YALE J. L. & TECH. 74, 91 (2018) (contending that "[t]he best reading of these cases is that prior restraints must endure something more than traditional strict scrutiny").

held unconstitutional, unless no other choice exists." *Rosen v. Port of Portland*, 641 F.2d 1243, 1250 (9th Cir. 1981).

Montana cannot satisfy this standard. National security does not justify the law. No state may pursue the nation's security interests, *see infra* Part I.B, and in any event, Montana has no evidence that permitting communication through TikTok would "inevitably, directly, and immediately cause the occurrence of an event kindred to imperiling the safety of a transport already at sea." *Pentagon Papers*, 403 U.S. at 726-27 (Brennan, J., concurring). In fact, even though the State requested records from TikTok during this litigation, SER-13–14; SER-30; SER-55, the district court still found the national security concerns unsupported. *See* ER-29–31. This is unsurprising, as China "doesn't need TikTok to find U.S. secrets." *See* SER-113–16; SER-118–19. The Act's unsupported allegation that TikTok publishes purportedly dangerous content to children, ER-63—a justification the State has tried to abandon in this litigation—also does not constitute an immediate threat of the highest magnitude. *See Bantam Books*, 372 U.S. at 66-67, 70-71 (invalidating similar restraints purporting to protect children); *Interstate Circuit v. City of Dallas*, 390 U.S. 676, 678-88 (1968) (same); *Se. Promotions*, 420 U.S. at 556 (same); *see also infra* Part I.A.4.b (explaining why this justification fails even lesser review).

Even if the State advanced a sufficiently dire and immediate interest, banning TikTok is not Montana's only way to serve it. *Rosen*, 641 F.2d at 1250. To address

20

purported data security concerns, Montana could rely on its existing prohibition of TikTok on government devices, *see* SER-121, enforce the general data-sharing rules it just enacted, *see* SER-123–46, or enact broader data-privacy protections. *See also infra* Part I.A.4.b.ii. To mitigate alleged risks to children, Montana could build on tools TikTok already provides (SER-157–59) by offering programming to educate parents about social media use and teaching safe social media practices in schools. *See, e.g.*, AB 787 (Cal. 2023-24) (directing public schools to offer instruction in social media literacy and digital citizenship). The district court noted several of these alternatives, holding Montana "used an axe to solve its professed concerns when it should have used a constitutional scalpel." ER-29. Since these options exist, SB 419 fails the scrutiny applicable to prior restraints. *Rosen*, 641 F.2d at 1250.[18]

### 3. SB 419's total ban on TikTok is inherently overbroad.

SB 419 separately violates the First Amendment because it is overbroad. Although the district court did not apply the overbreadth doctrine to enjoin SB 419, the Constitution "gives significant protection from overbroad laws that chill speech within the First Amendment's vast and privileged sphere." *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 244 (2002). A law is facially "overbroad if a substantial number

---

[18] Because SB 419 erects an unjustified prior restraint, there is no need to assess whether it also fails scrutiny for lacking the necessary "procedural safeguards." *Freedman v. Maryland*, 380 U.S. 51, 58 (1965). In any event, it lacks those too. *See id.* at 58-59 (setting forth the three material requirements); *accord Se. Promotions*, 420 U.S. at 560 (same).

of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 473 (2010) (citation omitted). The unique attributes of the internet require robust application of the doctrine. *Reno*, 521 U.S. at 863.

SB 419's ban is overbroad because it shuts down an entire medium of expression, including protected expression. *City of Ladue*, 512 U.S. at 56; *see, e.g.*, *BSA, Inc. v. King County*, 804 F.2d 1104, 1109-10 (9th Cir. 1986) (ban on nude dancing overbroad because it also prohibited protected expression). The Act does not just address the time, place, or manner of a medium's use, but shuts down all speech through that medium at all times, in all places, by all manners. *Cf. City of Ladue*, 512 U.S. at 56, 58-59 (enjoining sign ban).

The Supreme Court has twice invalidated similar bans. In *Lovell v. City of Griffin*, 303 U.S. 444, 451 (1938), the Court found impermissible an ordinance banning circulation of printed material within a city's limits. In *Board of Airport Commissioners of City of Los Angeles v. Jews for Jesus, Inc.*, 482 U.S. 569, 574-75 (1987), the Court enjoined a ban on all "First Amendment activities" in the Central Terminal Area of the Los Angeles International Airport, even though plaintiffs could have distributed pamphlets elsewhere. SB 419 similarly bans all speech of any kind in a single forum. *See also Berger v. City of Seattle*, 569 F.3d 1029, 1056 (9th Cir. 2009) (en banc) (ordinance barring speech activities in a park overbroad).

22

The State concedes SB 419 eliminates Plaintiffs' "abilities to express themselves on TikTok," Br. 37 n.32, and does not dispute the First Amendment protects this expression. Since virtually *all* the speech SB 419 bans—not just a substantial amount—is undisputedly protected, the law significantly exceeds any legitimate application it might have to unprotected speech. *Stevens*, 559 U.S. at 473; *see also, e.g.*, *BSA, Inc.*, 804 F.2d at 1110 (same).

That SB 419 bans only one medium is irrelevant. *Cf.* Br. 37, 45. Both *Jews for Jesus*, 482 U.S. at 574-75 (one area of an airport) and *Berger*, 569 F.3d at 1056 (one park) held single-forum bans overbroad even though the affected speakers could communicate through other channels. Br. 45. If "a law prohibiting 'all protected expression' at a single airport is not constitutional, it follows with even greater force that the State may not enact [a] complete bar to the exercise of First Amendment rights on websites integral to the fabric of our modern society and culture." *Packingham v. North Carolina*, 582 U.S. 98, 109 (2017) (citation omitted).

*City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789 (1984), which the State cites, does not suggest otherwise. The harm in that case—visual blight from signs on public property—was not a byproduct of expression but created by and inseparable from it, justifying restriction of the entire medium. *Id.* at 810; *see Frisby v. Schultz*, 487 U.S. 474, 485 (1988) (ban avoids overbreadth "only if each activity within the proscription's scope is an appropriately targeted evil"). In contrast,

23

creating, posting, disseminating, and moderating videos on TikTok does not itself create security or privacy concerns. Because Montana could have addressed its purported concerns without prohibiting expressive activity, SB 419 is overbroad. *Taxpayers for Vincent*, 466 U.S. at 810.

### 4. SB 419 fails constitutional scrutiny.

Apart from these defects, SB 419 is invalid under the tiered scrutiny analysis often applied under the First Amendment. The Act is subject to at least strict scrutiny and presumptively unconstitutional because it enacts a prior restraint, *supra* Part I.A.2, singles out a particular medium and group of speakers, *Ark. Writers' Project*, 481 U.S. at 231, and enacts a content-based regulation, *Reed*, 576 U.S. at 163-64. The district court did not decide which level of scrutiny applied because it concluded SB 419 failed even the intermediate review to which it would otherwise be subject.

### a. SB 419 is subject to strict scrutiny.

At least strict scrutiny applies to SB 419 for three separate reasons.

First, SB 419 erects a prior restraint subject at minimum to strict scrutiny, *Twitter*, 61 F.4th at 698, if not even more exacting review. *See supra* Part I.A.2.

Second, laws singling out a small number of publishers for punishment trigger strict scrutiny. *Turner*, 512 U.S. at 659-60. Although the law in *Turner* did not satisfy these criteria because it involved characteristics unique to the cable medium, *id.* at 661, SB 419 does because it singles out one medium of online expression for

the most extreme form of punishment: a ban.  *See United States v. Grace*, 461 U.S. 171, 177 (1983) (strict scrutiny applies to "an absolute prohibition on a particular type of expression").  The tax cases discussed in *Turner* are instructive.  In *Minneapolis Star*, the Supreme Court applied strict scrutiny to a special tax targeting specific publications even absent evidence of illicit motive and despite the availability of other means to communicate.  460 U.S. at 585-86, 592-93.  So too, in *Arkansas Writers' Project*, strict scrutiny applied to a selective tax regime that targeted individual media outlets even without burdening the particular views of specific publications.  481 U.S. at 230-31, 234.  Both were suspect and held invalid because their structure—which, even as taxes, targeted relatively few speakers— risked suppressing certain ideas.  *Turner*, 512 U.S. at 660.  Their defect was not that they would necessarily be used for improper purposes but that they could be.  *Reed*, 576 U.S at 167.  SB 419 has the same invidious structure, singling out TikTok for adverse treatment, and is worse because it *bans* TikTok.  *See Harris*, 772 F.3d at 575 (banning speech for a category of speakers would be subject to strict scrutiny).

Third, strict scrutiny applies because SB 419 facially regulates on the basis of content for several reasons.  First, like California's attempt to ban a website from publishing user-sourced and user-generated information, SB 419 bars the dissemination of one type of speech, TikTok videos, made by a single category of speakers, TikTok creators. *IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1120 (9th Cir.

2020).   Second, one of SB 419's stated purposes is to prevent dissemination of allegedly dangerous content to minors, ER-63, another focus of testimony supporting the Act, SER-270–71.  *See Ashcroft v. ACLU*, 542 U.S. 656, 670 (2004) (laws "designed to protect minors from viewing" harmful content are content-based and subject to strict scrutiny).  Finally, the State has also justified the ban by alleging TikTok pipes foreign propaganda into American homes.  SER-260; *see also* ER-37–38.  Strict scrutiny applies to such laws focused on the content of speech and the potential impact on its audience.  *See Boos v. Barry*, 485 U.S. 312, 321 (1988); *see also Lamont v. Postmaster Gen.*, 381 U.S. 301, 307 (1965) (First Amendment barred restricting access to alleged communist propaganda).

The State quotes *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989), and *Lone Star Security & Video, Inc. v. City of Los Angeles*, 827 F.3d 1192, 1200 (9th Cir. 2016), for the proposition that SB 419 escapes strict scrutiny because its stated purposes are not related to the content of expression.  Br. 39.  But the Supreme Court foreclosed this argument in *Reed*, explaining it "misunderstand[s] our decision in *Ward* as suggesting that a government's purpose is relevant even when a law is content based on its face."  576 U.S. at 166.  "*Ward* had nothing to say about facially content-based restrictions because it involved a facially content-*neutral* ban on the use, in a city-owned music venue, of sound amplification systems not provided by the city."  *Id.* at 166-67.  Here, however, SB 419 *is* content-based on its face: the Act

bans one group of content creators (TikTok users) from posting one type of content (TikTok videos), and it does this based on formal findings that TikTok permits the transmission of allegedly dangerous content.  *Cf. Lone Star Security*, 827 F.3d at 1200 (distinguishing *Reed* where law restricted all mobile billboards, not a single provider, based on concerns about editorial judgment).  If "a law limiting the content of newspapers, but only newspapers, could not evade strict scrutiny" as an allegedly content-neutral regulation, *Reed*, 576 U.S. at 170, Montana certainly cannot evade strict scrutiny by enacting a law limiting the content of social media, but only social media, much less a single and distinct social media platform. The First Amendment protects—not restricts—speech, and Montana cannot acquire *greater* leeway to regulate speech by suppressing *more* of it.  *Id.* at 167.

Relying on a dissenting opinion expressing a view the Supreme Court rejected last term, the State claims that at most intermediate scrutiny from *United States v. O'Brien*, 391 U.S. 367 (1968), applies because SB 419's burden on TikTok users is "incidental" and "ancillary to a regulation that did not aim at expression."  Br. 38 (quoting *303 Creative*, 600 U.S. at 632 (Sotomayor, J., dissenting)).  This argument also rests on the erroneous assertion that SB 419 regulates conduct, not speech.  *See supra* Part I.A.1.  Just as the Supreme Court found that a Colorado law forcing a designer to create digital content for all customers had more than an incidental effect on speech, *303 Creative*, 600 U.S. at 596, Montana's effort to ban an entire forum

for content does more than incidentally burden Plaintiffs' First Amendment rights to create, disseminate, and receive speech. ER-16–18. *O'Brien* is thus inapplicable. *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 659 (2000) (cited ER-19–20); *accord Green*, 52 F.4th at 790 (applying *Dale* to reject *O'Brien* where, as here, law's "direct operation" regulated speech); *see supra* Part I.A.1 (ban regulates speech directly).

### b.    SB 419 fails any level of First Amendment scrutiny.

Even assuming intermediate scrutiny applies, the district court correctly held that SB 419 fails First Amendment review. *See* ER-33.

Both strict and intermediate scrutiny require the State to prove at least that the law (1) will serve a substantial government interest "unrelated to the suppression of free expression" by alleviating in "a direct and material way" harms that are "not merely conjectural" and (2) is narrowly tailored to suppress no more speech "than is essential to the furtherance of that interest." *Turner*, 512 U.S. at 662, 664 (cleaned up) (intermediate scrutiny); *cf. United States v. Playboy Ent. Grp.*, 529 U.S. 803, 813 (2000) (strict scrutiny also requires the interest to be compelling, and the law to supply the least restrictive means to achieve it).

This is not a trivial evidentiary standard. It requires the government to prove a speech restriction "extend[s] only as far as the interest it serves." *Matal v. Tam*, 582 U.S. 218, 245 (2017) (citation omitted). Underscoring the burden, this Court last year applied intermediate scrutiny to invalidate laws prohibiting landlords from

28

questioning tenants, *Yim v. City of Seattle*, 63 F.4th 783, 793 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 693 (2024), banning firearm advertisements to minors, *Junior Sports*, 80 F.4th at 1116-20, and requiring herbicide warnings, *Nat'l Ass'n of Wheat Growers v. Bonta*, 85 F.4th 1263, 1282-83 (9th Cir. 2023). SB 419 also fails review.

> **i.      The State has not shown SB 419 actually serves an important state interest.**

SB 419 declares (and the district court found, *see* ER-24) two ostensible legislative interests: protection of Montanans from Chinese "espionage," ER-63–64, and removal of allegedly "dangerous content that directs minors to engage in dangerous activities," ER-63. Neither supplies a legitimate basis to restrict speech.

The State focuses on the first asserted interest—protecting Montanans from "international espionage." ER-63–64. But "[n]ational-security policy is the prerogative of the Congress and President," *Ziglar v. Abbasi*, 582 U.S. 120, 142 (2017), not the states. The district court thus correctly held preventing Chinese espionage was not a legitimate—let alone substantial—interest Montana could pursue. ER-25–26; *see also infra* Part I.B. The State offers no defense of the Act on the second basis. Nor could it. The Supreme Court has repeatedly held invalid laws designed to shield minors from protected speech. *See Brown*, 564 U.S. at 794-95, 805. And even under intermediate scrutiny, such laws fail because they are directly related to the suppression of free expression. *Turner*, 512 U.S. at 662. Cornered, the State tries to recharacterize the law as a consumer protection statute

that happens to overlap with a national security interest. Br. 46 n.33. Its admission that "SB 419 targets a hostile foreign government's" alleged espionage, however, belies that position. *Id.* at 26; *see also id.* at 5-12, 13, 25, 26, 27, 33, 43, 44, 52-53, 56-58, 64 (repeatedly stating SB 419 exists to prevent a "hostile foreign power" from conducting espionage). But even taking the asserted interest at face value, the State has not shown the risks of privacy violations are real, not just conjectural, or that banning TikTok "will in fact alleviate these harms in a direct and material way." *Turner*, 512 U.S. at 664 (intermediate scrutiny); *see also Playboy*, 529 U.S. at 819, 822 (strict scrutiny also requires evidence).

Montana has no evidence that alleged Chinese government-directed data harvesting is a real problem on TikTok. *Cf. Junior Sports*, 80 F.4th at 1117 (state "may not restrict protected speech to prevent something that does not appear to occur"). Despite taking expedited discovery to corroborate its concern, *see* SER-13–14; SER-30; SER-55, the State adduced no evidence that any U.S. TikTok user data has been shared with the Chinese government, or any other evidence substantiating its position. The State instead relies entirely on media reports. *See* Br. 5-12. But unconfirmed conjecture cherry-picked from a handful of news reports is not enough. *See Turner*, 512 U.S. at 664 (government must demonstrate harms are real); *see also*, *e.g.*, *FEC v. Cruz*, 596 U.S. 289, 307-08 (2022) ("handful of media reports and anecdotes" insufficient); *Klein v. City of San Clemente*, 584 F.3d

1196, 1202 (9th Cir. 2009) (collecting cases from this Court applying intermediate scrutiny and disregarding unevidenced speculation about dangers).

The cited allegations, however, are mere speculation about hypothetical risks, not facts or evidence of any specific risk. *Junior Sports*, 80 F.4th at 1119. The State, for example, cites an article claiming TikTok's code allows it to monitor user activity through an in-app browser. *See* Br. 6 n.4. But the article also alleges that other platforms could do the same, and finds no evidence TikTok is itself doing so. *Id.* The State also cites unproven allegations from a lawsuit filed by a former ByteDance Inc. employee who left the company in 2018, *id.* at 8 nn.9-10, refuted claims by a former employee who left the company after only six months, *id.* at 8 n.8,[19] and uncorroborated allegations that an unnamed individual reported the same week that reporters had not seen or verified, *id.* at 7 n.7. "The First Amendment cannot be so easily trampled through inferences and innuendo." *Junior Sports*, 80 F.4th at 1119.

Montana also fails to show that banning TikTok would actually address any purported concern that Chinese government officials can obtain data about Montanans. *Cf. id.* (government must present evidence connecting restriction to

---

[19] As just one example of the dangers of relying on unproven allegations in news reports, this former employee recently sued several U.S. government agencies in March 2024, alleging he was put under 24-hour surveillance while working in Mexico; that U.S. Attorney General Merrick Garland and Director of National Intelligence Avril Haines "wickedly instigated" his firing; and the FBI helped the CIA share his private information with foreign governments. Compl., *Goziker v. U.S. Dep't of Justice*, No. 24-cv-619 (D.D.C. Mar. 5, 2024).

interest allegedly advanced). The State's brief ignores this, but as the district court explained and as record evidence shows, even if the State's data-sharing concern were substantiated (it is not), "it is well-established that other social media companies" sell data they collect to third parties. ER-30–32 (citing cases); *see also* SER-201–02 ¶ 13; SER-203–05 ¶ 17. China could still buy Montanans' user information from data brokers notwithstanding SB 419. The Act fails to "directly and materially advance its aim" since it permits other causes of the same putative (but unestablished) harm. *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 489, 491 (1995) (banning content from beer labels did not advance public health interests where content was still permitted on wine and spirit labels); *see also Greater New Orleans Broad. Ass'n, Inc. v. United States*, 527 U.S. 173, 193 (1999) (banning private casinos from advertising did not minimize casino gambling where tribal casinos remained free to advertise).

### ii.     The State has not shown narrow tailoring.

Even accepting the State's unproven claim that SB 419 serves and actually advances legitimate data security interests, the law fails First Amendment scrutiny because it is not narrowly tailored to that objective, let alone the least speech-restrictive means to accomplish it (as strict scrutiny requires).

First, SB 419 burdens substantially more speech than necessary to further the State's purported interests. *Ward*, 491 U.S. at 799. As the district court found,

"[t]his is apparent on the law's face" because it "completely bans TikTok" rather than address only the "the perceived Chinese problem." ER-29. The State responds that SB 419 is narrowly tailored because it "eliminate[s] the exact source of the evil it sought to remedy," Br. 45 (citation omitted), but so does a sledgehammer swatting a fly. Were it concerned about consumer protection, Montana could have enacted less speech-restrictive measures limiting whether and how companies collect data; created rules preventing companies from selling or providing user data to certain third parties; or enforced the restrictions from its contemporaneously enacted data security law, SB 384. *See* SER-123–46; *see also* ER-30.

Of these, the State only addresses SB 384, stating that statute merely enables users "to opt out of the *sale* of their data" without restricting "unsafe data *collection* practices." Br. 45-46 (emphasis added, citation omitted). But because narrower measures "must be the State's first resort," *Packingham*, 582 U.S. at 107, this distinction simply makes the case for a law that *does* restrict data collection practices without banning expression. *Compare, e.g.*, Cal. Civil Code § 1798.100 *et seq.* (California Consumer Privacy Act of 2018 regulates data collection without shuttering online communication service). The State offers no evidence that data collection practices could not be regulated in a more narrow manner. *Anderson*, 621 F.3d at 1065. Instead, Montana argues that it currently lacks the legal tools to address data collection, but that is not the test. *See id.* Montana cannot enact "a total

33

ban on protected First Amendment activity simply because of [its] failure to provide the resources it thinks are necessary to regulate it" more narrowly. *Id.*

Second, the State fails to show that SB 419 leaves open adequate alternative channels of communication that are just as effective as TikTok. *Ward*, 491 U.S. at 802; *see also Linmark Assocs., Inc. v. Township of Willingboro*, 431 U.S. 85, 93 (1977) (less effective media to communicate are "far from satisfactory"). As with the ban held invalid in *McCullen v. Coakley*, 573 U.S. 464, 488-90 (2014), which eliminated the petitioners' "primary methods of communicating," *id.*, unrebutted evidence shows SB 419 precludes Plaintiffs from communicating with an audience they cannot reconstitute elsewhere. *Edwards v. City of Coeur d'Alene*, 262 F.3d 856, 866 (9th Cir. 2001) ("If an ordinance effectively prevents a speaker from reaching his intended audience, it fails to leave open ample alternative means of communication."). The Act denies Plaintiffs their right to choose a means of expression that they cannot replace without diminishing their message. *Cf. United Bhd. of Carpenters & Joiners of Am. Loc. 586 v. NLRB*, 540 F.3d 957, 969-70 (9th Cir. 2008) (no ample alternatives where regulation left speakers with "narrow range of ineffective options"); *see* ER-61 ¶ 9; ER-55 ¶ 11; SER-221–22 ¶¶ 15-16.

The existence of other "Internet-based application[s]" for sharing video

34

content is thus immaterial. *Cf.* Br. 45.[20] As with tattooing, communicating through TikTok "carries a message quite distinct from displaying the same words or picture[s] through some other" social media platform, and itself "provide[s] information about the identity of the speaker." *Anderson*, 621 F.3d at 1066-67 (citation omitted) (explaining why henna paste and airbrushing were inadequate alternatives to tattoos). TikTok is not only a technology offering unique tools for communication, but a community with a distinct culture. ER-54–55 ¶¶ 8, 11; SER-162–63 ¶¶ 3-4, 8; ER-59–61 ¶¶ 4-6, 9. A message expressed on TikTok may thus bear different meaning than the same message expressed on X, Facebook, or Instagram. *Cf. City of Ladue*, 512 U.S. at 56 (same sign may convey a different message when placed at a residence); *see also Center for Bio-Ethical Reform, Inc. v. City & Cnty. of Honolulu*, 455 F.3d 910, 924 (9th Cir. 2006) ("*Ladue* teaches that in evaluating the adequacy of substitutes, the court must look to the unique communicative importance of the foreclosed medium[.]"). And indeed, the district court found no evidence that "TikTok is similar enough to other social media

---

[20] Montana's reliance on *Jacobs v. Clark County School District*, 526 F.3d 419, 437 (9th Cir. 2008), is inapt. That case involved a ban on expressive clothing in public schools where students have limited First Amendment rights guarded by a less stringent standard. *See Mahanoy Area Sch. Dist. v. B.L.*, 594 U.S. 180, 187-88 (2021). In any case, the evidence in *Jacobs* showed students retained adequate expressive alternatives under the more forgiving standard that applied. The only record evidence here refutes the adequacy of alternatives. *See* ER-61 ¶ 9; ER-55 ¶ 11; SER-221–22 ¶¶ 15-16.

applications that they may be considered" adequate alternatives.  ER-33; *see Univ. of Wash.*, 60 F.4th at 578 (fact findings underlying First Amendment preliminary injunction reviewed for clear error).  This context matters.  Montana may not ban an entire "mode of expression" just because some other alternative means of communications theoretically exist.  *Anderson*, 621 F.3d at 1068.

*       *       *

SB 419 shuts down constitutionally protected speech.  It fails any level of review and the injunction should be upheld.

### B.      SB 419 Impermissibly Regulates Foreign Affairs.

The district court correctly found that SB 419 unconstitutionally intrudes on the federal government's foreign affairs power, and is conflict preempted by Section 721 of the DPA.

### 1.      SB 419 violates the Foreign Affairs Doctrine.

The State acknowledges (Br. 49) the U.S. Constitution confers exclusive authority on the federal government to "administer foreign affairs." *Movsesian v. Victoria Versicherung AG*, 670 F.3d 1067, 1071 (9th Cir. 2012) (en banc).  This authority ensures the federal branch "speak[s] for the Nation with one voice," guaranteeing uniformity in the country's affairs with other nations.  *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 413-4, 424 (2003) (citation omitted).  Even absent a conflicting federal law or policy, a state law is preempted if (1) its "real purpose"

36

does not concern an area of traditional state responsibility and (2) it intrudes on the federal government's foreign affairs power (i.e., field preemption). *Movsesian*, 670 F.3d at 1074-75. The district court correctly found SB 419 satisfies both elements, a conclusion underscored by Congress's enactment of the Federal Ban.

### a. SB 419's real purpose does not concern an area of traditional state responsibility.

The State argues the district court "flip[ped] the evidentiary burden at the preliminary injunction stage on its head" when it decided that SB 419 has a foreign affairs purpose. Br. 3-54. Not so. Courts do not accept a state's asserted purpose blindly and instead look to a statute's text and legislative history. *Movsesian*, 670 F.3d at 1075. This searching scrutiny consistently leads courts to strike "down state laws which purport to regulate an area of traditional state competence, but in fact, affect foreign affairs." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 964 (9th Cir. 2010).

The Supreme Court in *Zschernig v. Miller*, 389 U.S. 429, 436 (1968), for instance, held preempted an allegedly ordinary probate law whose real purpose was to influence foreign nations' laws of inheritance. The Court has also rejected a state's purported interest in general insurance regulation to invalidate a law whose real purpose concerned the resolution of claims against Nazi collaborators by Holocaust survivors. *See Garamendi*, 539 U.S. at 425-26. And in *Von Saher*, this Court held invalid a California statute aiding the recovery of stolen property from

37

foreign governments, rejecting contentions that the law merely regulated property of museums and galleries within its borders.  592 F.3d at 964-65.

Applying the demanding scrutiny from these cases, the district court correctly held SB 419 impermissibly seeks to regulate foreign affairs.  *See* ER-33–41.  It found that SB 419's preamble—which refers to TikTok as a "valuable tool to China to conduct corporate and international espionage in Montana"—expresses the law's intent to influence foreign policy, not just protect consumers.  ER-37–38; *see also Movsesian*, 670 F.3d at 1075 ("legislative findings accompanying the statute plainly reveal its true purpose").  And it found the law's contingent voidness provision, which nullifies SB 419 if TikTok is "acquired by or sold to a company that is not incorporated in any other country designated as a foreign adversary," likewise demonstrates a foreign affairs purpose.  ER-37.  Similar evidence of statements from the officials who drafted, sponsored, signed, and now defend SB 419 confirms the law's real purpose.  *See* ER-37–38; SER-251–52; SER-296; SER-110–11.

Congress's enactment of the Federal Ban dispels any doubt that SB 419 intrudes on foreign affairs.  The Federal Ban—like SB 419—will ban TikTok in the United States unless it is sold to a company the government determines is not a "foreign adversary."  *Compare* H.R. 815, div. D, 118th Cong., Pub. L. No. 118-50 (Apr. 24, 2024)) § (2)(g)(6) (defining "qualified divestiture"); *with* ER-65 § 4 (law void if TikTok "is acquired by or sold to a company that is not incorporated in any

other country designated as a foreign adversary in 15 C.F.R. [§] 7.4").

The State admits SB 419's express textual justification refers to alleged threats from the Chinese government. *See* Br. 52 (serially quoting ER-63). And it concedes SB 419 would be void *but for* TikTok's alleged nexus to that foreign power. *Id.* Although it claims SB 419 nevertheless serves a legitimate state interest because it addresses "the threat of harvesting Montanans' personal data," it admits in the same sentence that SB 419 only does so to the extent TikTok allegedly provides access to the Chinese Communist Party—not anyone else. *Id.* A law concerned with protecting consumers' data from all abuses would not void itself as soon as the allegedly offending company lacked an asserted nexus to a foreign government. *See Garamendi*, 539 U.S. at 425-26 (law singling out European companies directed to foreign affairs). Because SB 419 does not apply to all kinds of consumer data risks, but only to those posed by sharing data with a single foreign government, its real purpose is related to foreign affairs. *Von Saher*, 592 F.3d at 964 (same with respect to law that only applied to stolen art claims "of Holocaust victims and their heirs").

The district court properly relied on statements in the legislative record to bolster this conclusion. *Cf.* Br. 54-57. Statements by legislative and executive sponsors provide a valid basis to assess a law's real purpose. *See Von Saher*, 592 F.3d at 965 (considering memo from governor's office and statements in legislative analysis); *see also Kyocera Document Sols. Am., Inc. v. Div. of Admin.*, -- F. Supp.

3d. --, 2023 WL 8868837, at *17 (D.N.J. Dec. 22, 2023) (considering statements from New Jersey law's primary sponsors that law's purpose was to punish Russia). Though "[s]tatements by individual legislators should not be given controlling effect," they may provide evidence of legislative intent where, as here, "they are consistent with the statutory language and other legislative history[.]" *Beaver v. Tarsadia Hotels*, 816 F.3d 1170, 1186 (9th Cir. 2016) (citation omitted).

These and other statements in the legislative record confirm SB 419's foreign affairs purpose. *See generally* ER-37–38. Legislators claimed SB 419 was designed to "send a message" to Congress to do something about China. SER-296. One urged support because it addressed a threat from "the Chinese Communist Party." SER-251–52. The Attorney General—who "wrote the bill and went on a national public speaking tour touting its merits," ER-20—admitted that "pushing back against the Chinese communist government" is "what this is about." SER-110. He declared TikTok a "propaganda tool" for the Chinese Communist Party, SER-260, which he claims is "spying on Americans," and part of an "initial salvo" in an "inevitable" war with the United States, SER-251–52. Citing these concerns, Knudsen testified the law was needed because "there's no guarantee that the feds are actually going" to address them. SER-272–73. Usurpation of federal authority *was the point*.

The State's attempt to recharacterize these statements in terms of consumer protection are not serious. *Cf.* Br. 55-56. The text and legislative history of SB 419

40

make clear the State's concern is espionage, not protecting consumers. *See* ER-39 (concluding that the "actual purpose of the bill is to stop a perceived national security threat" from China). That finding was correct.

> **b.** **SB 419 intrudes on the federal government's foreign affairs powers.**

A state law intrudes on the federal government's foreign affairs power when it has "more than some incidental or indirect effect on foreign affairs." *Movsesian*, 670 F.3d at 1076 (citation omitted). "[E]xpress[ing] a distinct point of view on a specific matter of foreign policy" is an impermissible, not an incidental, effect. *Id.* at 1077 (law providing redress for Armenian Genocide victims sent impermissible political message). Here, the district court found SB 419 "send[s] a political message" by expressing a distinct foreign policy position: that the Chinese government supposedly acting through a corporation operating in the United States should not be permitted to take and use data "for nefarious purposes." ER-40.

The State concedes this is a "distinct political point of view," but again argues it relates to consumer protection with at most an incidental effect on foreign affairs. Br. 58-59 (citation omitted). This incredulous assertion turns SB 419 on its head. The law proclaims an intent to deny China a "valuable tool" to promote "the Chinese Communist Party's interests." ER-64. Its sponsors contend it "send[s] a message" about the federal government's China policy. SER-296. And the Attorney General touts the law in terms of a power conflict he asserts "the feds" have failed to address.

SER-272–73. Commandeering U.S. foreign policy is not an ancillary effect of SB 419, it is its raison d'être.[21]

Far from proving the State's point, *Movsesian*, *Von Saher*, and *Zschernig* support Plaintiffs. *Cf.* Br. 59. *Movsesian* held that a state law intrudes on federal powers when it "establishes a particular foreign policy" by subjecting private foreign companies to adverse treatment for their role in a foreign government's asserted—but disputed—misconduct. 670 F.3d at 1076. *Von Saher* held that a state law intrudes on federal power when it purports to provide state legislative remedies to acts of aggression by a foreign power. 592 F.3d at 967. And *Zschernig* held that a state law intrudes on federal power when it takes a position on "foreign diplomatic"

---

[21] The State cites *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425 (2002), and *Republican Party of New Mexico v. Torrez*, -- F. Supp. 3d --, 2023 WL 5310645 (D.N.M. Aug. 17, 2023), to contend the district court overlooked its "citations to volumes of credible news articles" as evidence that its "real purpose" concerned protecting user data, not affecting foreign affairs. *See* Br. 53 (citation omitted). In fact, each article *ratifies* the State's particular interest in foreign affairs, not garden-variety consumer protection. In any event, neither case suggests that news reports may establish a government's "real purpose" despite contradictory legislative text and history. *Alameda Books* involved a First Amendment challenge to an ordinance restricting adult-oriented businesses from concentrating in the same building. 535 U.S. at 429-30. It held a non-movant city defendant raised triable issues precluding summary judgment under the lenient "secondary effects" doctrine by relying on a prior related study as justificatory evidence. *Id.* at 438-39. *Torrez* involved whether the public was aware of previously alleged campaign finance violations New Mexico later relied on to pass contribution limits. 2023 WL 5310645, at *13. The court held the existence of newspaper articles was sufficient to infer such awareness. *Id.* That sort of routine judicial notice is a far cry from a rule allowing governments to rely on unverified press reports to reclassify their real aims under scrutiny.

issues and "affect[s] the power of the central government to deal with those problems." 389 U.S. at 435, 441. SB 419 does all of these things: it penalizes a private and allegedly foreign company for its unsubstantiated and contested role in a foreign government's claimed misconduct; purports to provide a state remedy to alleged Chinese espionage; and interposes Montana into ongoing diplomacy.[22]

Even if SB 419's goals were aligned with federal foreign policy, *cf. infra* Part I.B.2, it would make no difference. *Cf.* Br. 57. Because the federal government occupies the field of foreign affairs, what matters is that the United States "speak[s] for the Nation with one voice in dealing with" the Chinese government. *Garamendi*, 539 U.S. 396 at 424 (citation omitted). A state thus intrudes upon exclusive federal powers by announcing its own foreign policy, even absent a conflicting federal policy. *Movsesian*, 670 F.3d at 1076 (quoting *Zschernig*, 389 U.S. at 441).[23]

### 2. Federal law preempts SB 419.

SB 419 is not only impermissible under the doctrine of field preemption, it also is invalid under the doctrine of conflict preemption. *See Haaland v. Brackeen*,

---

[22] The State's reliance on *Arizona v. United States,* 567 U.S. 387 (2012) (Br. 48) is also misplaced. There, the Court found it was premature to enjoin enforcement of a law that was susceptible to more than one interpretation, only some of which might intrude on federal powers.

[23] The Federal Ban forecloses any dispute whether SB 419 conflicts with federal foreign policy. Unlike SB 419, which voids itself if TikTok is sold to any company not incorporated in a country designated as a foreign adversary, the Federal Ban requires that the President *approve* any transaction divesting TikTok from its current ownership. H.R. 815, div. D, 118th Cong., Pub. L. No. 118-50 (Apr. 24, 2024).

599 U.S. 255, 287 (2023). Under this doctrine, a law is preempted if it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Crosby v. NFTC*, 530 U.S. 363, 372-73 (2000) (citation omitted). Conflict preemption is found "by examining the federal statute as a whole and identifying its purpose and intended effects." *Id.*

The district court correctly held Section 721 of the DPA likely preempts SB 419. The DPA authorizes CFIUS to investigate the national security impact of foreign acquisitions of U.S. businesses and mitigate risks. 50 U.S.C. §§ 4565(b)(1)(A)-(B) & 4565(a)(4)(B)(i). If CFIUS finds that risks cannot be mitigated, the President may block the transaction. *Id.* § 4565(d). State laws that affect the government's "capacity to bargain for the benefits of access to the national economy" conflict with the DPA and are preempted. *Crosby*, 530 U.S. at 381.

That is exactly what SB 419 does. The federal government, through CFIUS, is engaged in negotiations with TikTok and its parent company ByteDance Ltd. concerning TikTok's operations in the United States. *See* Petition, *TikTok, Inc. v. CFIUS*, No. 20-1444 (D.C. Cir. Nov. 10, 2020) ("Pet."); Status Report, *TikTok Inc. v. CFIUS*, No. 20-1444 (D.C. Cir. April 22, 2024). By rendering Montana inaccessible in those negotiations, SB 419 diminishes the federal government's power. *Crosby*, 530 U.S. at 381; *see also, e.g.*, *Odebrecht Constr., Inc. v. Sec'y, Fla. Dep't of Transp.*, 715 F.3d 1268, 1285 (11th Cir. 2013) (preempting law creating

44

"enclave that the President can no longer offer in bargaining with Cuba") (citation omitted). The district court thus correctly held that the DPA preempts SB 419, which conflicts with and impedes the federal government's ongoing negotiations. ER-43.

The State argues the CFIUS proceeding has no preemptive effect since it only concerns ByteDance's attempt to acquire another company, not to shut down or limit TikTok's U.S. operations. *See* Br. 61-63. That is incorrect. Because the Executive Order that gave rise to the ongoing CFIUS proceeding required ByteDance to divest its U.S.-based interests in TikTok, the CFIUS negotiations necessarily encompass attempts to "explore mitigation alternatives" that would permit TikTok to continue its U.S. operations. *See* Pet. ¶ 26.[24]

The Federal Ban underscores this conflict. That ban—like SB 419—seeks to address TikTok's alleged relationship with a Chinese company, but does so in ways materially different from SB 419. Unlike Montana's ban, the Federal Ban does not purport to take effect immediately—it gives the company 270 days to accomplish a "qualified divestiture." H.R. 815, div. D, 118th Cong., Pub. L. No. 118-50 (April 24, 2024)) §§ (2)(a)(2)(A), (2)(c)(1)(A). And unlike Montana's ban, which

---

[24] The State repeats its argument that "if Congress intended to preclude *any* state regulation of a business that was simultaneously being investigated by CFIUS, 'it surely would have enacted an express pre-emption provision.'" Br. 63 (citation omitted). But as the district court explained, this argument "misses the point of conflict preemption, which preempts state regulation even in the absence of explicit federal preemption." ER-43; s*ee also Crosby*, 530 U.S. at 372.

automatically voids itself upon a sale to a company not domiciled in a "foreign adversary" state, the Federal Ban limits a "qualified divestiture" to one approved by the President.  H.R. 815, div. D, 118th Cong., Pub. L. No. 118-50 (Apr. 24, 2024)) § (2)(g)(6).  Because the district court's injunction is the only thing preventing Montana's TikTok ban, the law directly conflicts with federal policy.

### C.    SB 419 Violates The Commerce Clause.

The district court properly ruled that SB 419 violates the "dormant" Commerce Clause, which limits the power of states to directly regulate or impede the flow of interstate commerce. *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 376 n.1 & 379 n.2 (2023).[25]  State laws that impede the flow of commerce through interstate channels violate the Commerce Clause when their burdens are "clearly excessive in relation to the[ir] putative local benefits."  *Pike*, 397 U.S. at 142.  The government bears the burden to prove that a law impeding commerce is justified by its benefits.  *Id.* at 145-46.

The State does not dispute that SB 419 burdens interstate commerce by prohibiting Plaintiffs "from conducting business on [TikTok]."  ER-46.  It instead argues the district court "ignored the abundance of evidence showing the harms that TikTok poses to users" in balancing these burdens with SB 419's putative local

---

[25] The district court also held the company was likely to prevail on its separate claim that SB 419 violates the Commerce Clause by regulating foreign commerce.  *See* ER-47.

46

benefits.  Br. 65-66.  But the district court did not ignore the law's asserted local benefits, it *weighed* the evidence and found it wanting.  *See* ER-47 (State failed to provide *any* evidentiary support for the putative benefits from banning TikTok).

This factual finding—that Montana lacked evidentiary support for any legitimate local benefit from banning TikTok—was neither clearly erroneous, *Sullivan*, 60 F.4th at 578, nor inconsistent with other cases concerning online services.  *See, e.g.*, *PSINet, Inc. v. Chapman*, 362 F.3d 227, 240 (4th Cir. 2004) (law regulating internet communications violated Commerce Clause where the statute burdened interstate commerce and its putative benefits had not been proven); *ACLU v. Johnson*, 194 F.3d 1149, 1162 (10th Cir. 1999) (same).  The court's finding also aligns with the Supreme Court's decisions in *Bibb v. Navajo Freight Lines, Inc.*, 359 U.S. 520, 530 (1959) (cited by *Ross*, 598 U.S. at 379 n.2), which invalidated a law regulating truck mudflaps where the state's showing of putative benefits was too inconclusive to justify the law's burden on interstate commerce, *id.*, as well as *Pike* itself, which invalidated a law regulating cantaloupe packing where the government failed to prove that advancing its "tenuous interest" was justified given "uncontradicted evidence that appellants' costs would be materially increased," 397 U.S. at 145-46 (citation omitted).

The State attempts to distinguish *Bibb* and the related cases cited in *Ross* because they involved physical goods, not electronic or online information.  *Cf.* Br.

47

66-67.  But this is an immaterial difference.  The principles articulated in *Bibb* apply with full force to online services, which, like other global instrumentalities of commerce, most naturally "require[e] national regulation."  *Johnson*, 194 F.3d at 1162; *see also PSINet, Inc.*, 362 F.3d at 240 (similar); *Publius v. Boyer-Vine*, 237 F. Supp. 3d 997, 1023 (E.D. Cal. 2017) (similar); *Backpage.com, LLC v. McKenna*, 881 F. Supp. 2d 1262, 1286 (W.D. Wash. 2012) (similar).

*SPGGC, LLC v. Blumenthal*, 505 F.3d 183 (2d Cir. 2007) (cited Br. 67), is inapposite.  There, the court rejected a Commerce Clause claim because the plaintiff, challenging a law regulating gift cards sold on the internet, had not identified any conflict.  *Id.* at 196.  Here, the conflict is manifest: Montana is the only state to ban TikTok.  Any user relying on TikTok to reach an audience in Montana is foreclosed from doing so.  Worse than regulating mudflaps, SB 419 is akin to a law banning *all* semitrucks in Montana.  Although a Montanan could still send and receive shipments by smaller trucks or trains, they would need to "shift ... cargo to differently designed vehicles once another state line was reached."  *Bibb*, 359 U.S. at 526.

Weighed against unrebutted testimony that banning TikTok would significantly impede Plaintiffs' abilities to conduct business across state lines, *see* SER-172 ¶ 6; ER-53–54 ¶ 7, SB 419's putative benefits have not been proven to a degree sufficient to overcome the law's clear burdens on interstate commerce.  *PSINet*, 362 F.3d at 240.  The Court should affirm for this reason as well.

## II.    The District Court Correctly Granted Injunctive Relief.

The district court correctly held that Plaintiffs will suffer irreparable harm absent an injunction. SB 419 will shutter Plaintiffs' preferred forum for expression, and this "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also Cal. Chamber of Com. v. Council for Educ. & Rsch. on Toxics*, 29 F.4th 468, 482 (9th Cir. 2022) (colorable First Amendment claim shows irreparable injury), *cert. denied*, 143 S. Ct. 1749 (2023); *see* SER-164 ¶ 9; ER-55 ¶¶ 12-14; SER-172 ¶ 8; SER-168 ¶ 7; ER-61 ¶ 10. Two Plaintiffs (Goddard and DiRocco) will also suffer irreparable economic harm, ER-60 ¶ 7; ER-55 ¶ 12, as even monetary injuries may be irreparable where, as here, sovereign immunity would bar recovery of damages. *Video Gaming Techs., Inc. v. Bureau of Gambling Control*, 356 F. App'x 89, 93 (9th Cir. 2009). The district court thus appropriately weighed the evidence to conclude this factor satisfied. *See* ER-47–49.

Equity and the public interest—which merge where the government is the party opposing an injunction, *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023)—also support an injunction because Montana "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. INS*, 753 F.2d 719, 727 (9th Cir. 1983). The Ninth Circuit has "consistently recognized the significant public interest in upholding First

Amendment principles," *Cal. Chamber of Com.*, 29 F.4th at 482 (citation omitted), particularly when, as here, enforcement would infringe the rights of not only plaintiffs but also others subject to the same restrictions, *Klein*, 584 F.3d at 1208. The district appropriately found this factor satisfied. *See* ER-49–50.

The State disputes none of these principles, resting its objection on its assertion that Plaintiffs' claims fail on their merits, as well as a contention that Goddard's and DiRocco's economic injuries are too speculative to award injunctive relief. *See* Br. 67-68. But because those claims are meritorious and because Plaintiffs testified specifically and without rebuttal to the monthly revenue and/or portion of their annual income they expected to lose in addition to their constitutional injuries, *see* ER-60–61 ¶¶ 7, 9-10; ER-53–54 ¶ 7, the Court should affirm the district court's finding that these factors are satisfied, *see* ER-49–50.

## CONCLUSION

This Court should affirm the district court's preliminary injunction.

Respectfully submitted,

Tim Cunningham
DAVIS WRIGHT TREMAINE LLP
560 SW 10th Avenue Suite 700
Portland, Oregon 97205
(503) 241-2300
timcunningham@dwt.com

Adam S. Sieff
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017
(213) 633-6800
adamsieff@dwt.com

Natasha P. Jones
Matthew B. Hayhurst
BOONE KARLBERG P.C.
201 W. Main Street, Suite 300
Missoula, Montana 59807
(406) 543-6646
npjones@boonekarlberg.com
mhayhurst@boonekarlberg.com

s/ Ambika Kumar
Ambika Kumar
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104
(206) 757-8030
ambikakumar@dwt.com

Chelsea T. Kelly
DAVIS WRIGHT TREMAINE LLP
1301 K Street NW, Suite 500 East
Washington, D.C. 20005
(202) 973-4200
chelseakelly@dwt.com

*Attorneys for Plaintiffs-Appellees*

Dated: April 29, 2024

**CIRCUIT RULE 28-2.6 STATEMENT OF RELATED CASES**

I am unaware of any related cases currently pending in this Court.

**Signature**: s/ *Ambika Kumar*
Ambika Kumar

**Date**: April 29, 2024

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

## FORM 8. CERTIFICATE OF COMPLIANCE FOR BRIEFS

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s): 23-2969**

I am the attorney or self-represented party.

**This brief contains 12,339 words,** excluding the items exempted by Fed. R.

App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P.

32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** ___s/ *Ambika Kumar*___          **Date** April 29, 2024
               Ambika Kumar

**CERTIFICATE OF SERVICE**

I hereby certify that on April 29, 2024, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: April 29, 2024                     s/ *Ambika Kumar*
                                              Ambika Kumar