No. 24-34

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

SAMANTHA ALARIO, HEATHER DIROCCO,
CARLY ANN GODDARD, ALICE HELD, AND DALE STOUT,

*Plaintiffs-Appellees*,

and

TIKTOK INC.,

*Plaintiff-Appellee*,

v.

AUSTIN KNUDSEN, in his official capacity as Attorney General
of the State of Montana,

*Defendant-Appellant*.

On Appeal from the United States District Court for the
District of Montana, Nos. 1:23-cv-56 and 1:23-cv-61 (Molloy, J.)

# REPLY IN SUPPORT OF MOTION TO DISMISS THE APPEAL AS MOOT AND TO VACATE THE JUDGMENT BELOW

AUSTIN KNUDSEN
*Attorney General of Montana*

CHRISTIAN B. CORRIGAN
*Solicitor General of Montana*

Montana Department of Justice
215 North Sanders
P.O. Box 201401
Helena, MT 59620-1401
(406) 444-2026
christian.corrigan@mt.gov

*Counsel for Defendant-Appellant*

## INTRODUCTION

Plaintiffs do not dispute either mootness or the appropriateness of dismissal. And Plaintiffs' opposition to vacatur rests on a single premise: that *Munsingwear* vacatur is unavailable unless the challenged order carries formal preclusive effect. But that runs directly against the Supreme Court's own application of *Munsingwear* vacatur. Each time a party has presented to the Supreme Court that same preclusion-based argument, the Court has rejected it without qualification. Preliminary injunctions on constitutional questions still have prospective "legal consequences," *Camreta v. Greene*, 563 U.S. 692, 713 (2011), so when mootness forecloses appellate review of such decisions through no fault of the losing party, *Munsingwear* vacatur follows as a matter of course. Mootness here follows not from any action by Montana but from TikTok's decision to divest its U.S.-based operations. And leaving this preliminary injunction in place will affect how the Montana legislature approaches its job of crafting legislation in the future. This Court should both dismiss this appeal and direct the district court to vacate the preliminary injunction.

## ARGUMENT

### I. *Munsingwear* vacatur properly applies to moot preliminary injunctions.

Plaintiffs rest the bulk of their opposition on a single premise: that *Munsingwear* vacatur is unavailable unless the challenged order carries formal preclusive effect. Plaintiffs are wrong.

**A.** As Montana previously explained, *Munsingwear* vacatur is an equitable doctrine that provides fairness to litigants who, through no fault of their own, lose the opportunity to obtain appellate review of an adverse ruling. *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 25 (1994). "The point of vacatur is to prevent an unreviewable decision 'from spawning any legal consequences,' so that no party is harmed by ... a 'preliminary' adjudication." *Camreta*, 563 U.S. at 713 (quoting *United States v. Munsingwear*, 340 U.S. 36, 40-41(1950)). "[V]acatur *must* be decreed for those judgments whose review is, in the words of *Munsingwear*, 'prevented through happenstance.'" *Bancorp*, 513 U.S. at 23 (emphasis added). Vacatur "clears the path for future relitigation of the issues between the parties and eliminates a judgment, review of which was prevented." *Munsingwear*, 340 U.S. at 40.

Plaintiffs now claim that *Munsingwear* vacatur is unavailable wherever "the order sought to be vacated has no preclusive effect." Opp. at 1. But that is not the law. *Munsingwear* and its progeny have never limited the doctrine to judgments carrying formal preclusive effect. The Supreme Court framed the doctrine's purpose in broader terms, noting that the doctrine exists to prevent unreviewable decisions from "spawning *any* legal consequences." *Munsingwear*, 340 U.S. at 40-41 (emphasis added). Preclusion is one such negative consequence, but it is not the only one. A preliminary injunction order containing an extended constitutional analysis of state legislation—one that Montana lost the opportunity to meaningfully challenge on appeal through no fault of

its own—carries significant ongoing legal consequences of its own, consequences that fall squarely within *Munsingwear*'s remedial purpose. *See infra* 8–9.

The Supreme Court's recent decision in *Camreta v. Greene* made clear that *Munsingwear*'s "any legal consequences" standard reaches well beyond situations of preclusion. In *Camreta*, the issue was qualified immunity—the lower court ruled that even though the officers committed a constitutional violation, the constitutional violation was not clearly established. 563 U.S. at 697–98. This posture left no negative, preclusive effect against the officers, particularly after the case became moot during the appeal. *Id.* at 710. Yet the Supreme Court still applied *Munsingwear* to vacate the lower court's ruling that the officers committed a constitutional violation. *Id.* at 710–13. The Court held that the preliminary constitutional holding was "a legally consequential decision," since it would still have a "prospective effect on the parties" and would "change the way [the officer] performs his duties." *Id.* at 702–03, 713.

The "legal consequence" justifying vacatur in *Camreta* was not the risk of future preclusion, but the ongoing burden of leaving the government bound by an adverse, unreviewable constitutional ruling—one that, by its mere existence, would shape officials' future conduct. The same sort of "legal consequence" exists here. Montana's Legislature regularly enacts legislation, and its members must assess and consider the constitutional landscape when doing so. An unreviewable federal court ruling that Montana's attempt to regulate a foreign entity in this way was unconstitutional on multiple grounds will cast a long shadow that may discourage or "change" the way the

Montana Legislature thinks about seeking to exercise its sovereign legislative authority. *Camreta*'s import here is clear: Vacatur is required.

**B.** Plaintiffs do not cite any Supreme Court case that limits *Munsingwear* vacatur to situations with preclusive effect. Nor can they. In recent years, the Supreme Court has left no doubt that it considers a preliminary injunction on constitutional issues to be a "legally consequential decision" that should receive *Munsingwear* vacatur. *Camreta*, 563 U.S. at 713.

In multiple recent cases, parties opposing the application of *Munsingwear* vacatur have presented to the Supreme Court the very argument Plaintiffs now advance. In 2023, the United States sought *Munsingwear* vacatur for a preliminary injunction against the military about the then-mooted military COVID-vaccine requirement. The opposing party argued that *Munsingwear* vacatur "should not typically issue with respect to preliminary injunctions," since such "preliminary rulings ... have little-to-no res judicata significance" and were "not a final judgment." Brief in Opp., *Kendall v. Doster*, 2023 WL 7002475, at *38 (U.S. 2023) (cleaned up). But the Supreme Court rejected that argument, vacated the decision of the Sixth Circuit, and explicitly ordered that court "to direct the District Court to vacate as moot its order granting a preliminary injunctions." *Kendall v. Doster*, 144 S.Ct. 481, 481 (2023).

The same thing happened in *Biden v. Feds for Medical Freedom*, 144 S.Ct. 480 (2023). There, the party opposing vacatur relied on the decisions from a variety of courts of appeals to argue that "*Munsingwear* orders vacating the underlying order should not

typically issue with respect to preliminary injunctions" that have no "res judicata significance." Brief in Opp., *Biden v. Feds for Medical Freedom*, 2023 WL 5530400, at *38–39 (U.S. 2023) (cleaned up). The Supreme Court rejected this argument and ordered the Fifth Circuit "to direct the District Court to vacate as moot its order granting a preliminary injunction." *Feds for Medical Freedom*, 144 S.Ct. at 480–81.

Nor can Plaintiffs escape the reality that the Supreme Court has also explicitly ordered this Court to vacate a preliminary injunction that became moot while an appeal was pending. *See Mayorkas v. Innovation L. Lab*, 141 S.Ct. 2842, 2842 (2021). There, yet again, the party opposing vacatur stressed that the lower court's preliminary injunction should not be vacated because it was not a "final judgment" and would only be persuasive "guidance" rather than binding precedent. *See* Opp. to Mot. to Vacate, *Mayorkas v. Innovation L. Lab*, 2021 WL 2458454, at *10 (U.S. 2021). The Supreme Court disagreed and ordered this Court "to direct the District Court to vacate as moot the … order granting a preliminary injunction." *Innovation L. Lab*, 141 S.Ct. at 2842. Plaintiffs contend that vacatur of the preliminary injunction "followed naturally" from vacating this Court's opinion, Opp. at 11, but that assertion itself contradicts Plaintiffs' claim that leaving a preliminary injunction in place has no ongoing "legal consequences." If a moot preliminary injunction causes no prospective legal repercussions (as Plaintiffs contend), the Supreme Court could have simply vacated this Court's *Innovation L. Lab* decision while leaving the moot preliminary injunction untouched. That the Supreme Court rejected that course of action should be dispositive here.

These recent Supreme Court decisions draw an unmistakable through line. When a constitutional ruling on a preliminary injunction becomes moot, *Munsingwear* vacatur extends to that injunction as a matter of course—regardless of whether the injunction carries res judicata effect or constitutes a final judgment. Each time the Supreme Court was presented with the precise argument Plaintiffs now advance, it rejected that argument without qualification. A preliminary injunction on constitutional questions is therefore itself a "legally consequential decision" that must be erased when the controversy that gave rise to it has ceased to exist. *See Azar v. Garza*, 584 U.S. 726, 730–31 (2018) (vacating en banc order denying a stay, and ordering court of appeals to apply Munsingwear vacatur to underlying preliminary injunction). Plaintiffs offer no principled basis for departing from that unbroken line of authority.

**C.** Both this Court and other courts of appeal have correctly held that *Munsingwear* vacatur is proper for moot preliminary injunctions and for other orders that do not carry preclusive effect.

As Montana previously explained, this Court itself has ordered *Munsingwear* vacatur for both preliminary injunctions and other nonfinal orders. *See Anoke v. Silverman*, No. 24-5936, 2025 WL 2252556, at *1 (9th Cir. Aug. 4, 2025); *Arizona v. U.S. Dep't of Homeland Sec.*, No. 21-16118, 2023 WL 3033414, at *1 (9th Cir. Apr. 18, 2023); *Loc. No. 44 of Int'l All. of Theatrical Stage Emps. & Moving Picture Mach. Operators of U.S. & Canada v. Int'l All. of Theatrical Stage Emps. & Moving Picture Mach. Operators of U.S. & Canada*, 886 F.2d 1320, at *2 (9th Cir. 1989); *IBTCWHA, Local Union No. 2702 v. W.*

*Air Lines, Inc.*, 854 F.2d 1178, 1178 (9th Cir. 1988). Contrary to what Plaintiffs claim, it makes no difference that some of these cases do not involve preliminary injunctions, Opp. at 9, because this Court's decision to order *Munsingwear* vacatur for other nonfinal orders illustrates that Plaintiffs are wrong when they claim that *Munsingwear* vacatur applies only to final orders that have preclusive effect. Nor does it matter that some of these decisions occurred before *Bancorp*, since the Supreme Court has recently clarified that *Munsingwear* vacatur is appropriate for preliminary injunctions; this Court was correct all along. *See supra* 4–6.

And since the Supreme Court's recent decisions in *Doster*, *Feds for Medical Freedom*, *Innovation L. Lab*, and similar cases, other courts of appeals have written extensively on how moot preliminary injunctions should be vacated under *Munsingwear*. In *Voice of the Experienced v. Westcott*, No. 24-30420, 2025 WL 2222990 (5th Cir. Aug. 5, 2025), the Fifth Circuit directly confronted "whether [it] should also vacate the preliminary injunction under the doctrine of *United States v. Munsingwear*." *Id.* at *1. It answered "yes." *Id.* at *1, *3 (citing *Yates v. Collier*, 677 F. App'x 915, 918 (5th Cir. 2017) (vacating a moot preliminary injunction); *Smith v. Edwards*, 88 F.4th 1119, 1127 (5th Cir. 2023) (same)). And just earlier this month, in *Chicago Headlines Club v. Noem*, No. 25-3023, 2026 WL 622677 (7th Cir. Mar. 6, 2026), the Seventh Circuit applied *Munsingwear* vacatur to a moot preliminary injunction to "ensure the district court's injunction order does not affect future litigation" or "spawn" other "adverse legal consequences." *Id.* at *5.

**D.** *Munsingwear* vacatur exists not just to avoid preclusive effects, but to ensure that the accident of mootness does not impose inequitable legal consequences on parties who were deprived of a full appeal through no fault of their own. The Supreme Court has applied that principle to moot preliminary injunctions as a matter of course, and the courts of appeals have followed suit. Plaintiffs' preclusion-based limitation is an invention with no foothold in any of those decisions. This Court should reject it.

## II. The equities weigh in favor of vacating the preliminary injunction.

The equities here weigh strongly in favor of vacatur. The preliminary injunction will have real and lasting consequences by influencing the Montana Legislature's view of its authority to legislate on similar issues. And Montana did not forfeit its right to an appeal by agreeing to an abeyance while the federal legislative landscape was in flux.

**A.** As explained, *Munsingwear* vacatur exists to prevent a moot decision from "spawning any legal consequences." *Camreta*, 563 U.S. at 713 (quoting *Munsingwear*, 340 U.S. at 40–41). In *Camreta*, the "legal consequence" justifying vacatur was the ongoing burden of an existing constitutional ruling that, by its mere existence, would "change the way" a government official performs his duties. *Id.* at 703.

The same prospective harm will materialize here if the district court's preliminary injunction remains in place. The Montana legislature enacted SB 419 based on its judgment that the legislation fell within its sovereign authority to regulate commerce occurring within its borders. The district court disagreed and issued a sweeping constitutional ruling against the State. Montana appealed based on its view that this

ruling—on the First Amendment and on the other constitutional questions—was wrong and improperly restricts the State's sovereign regulatory power. Those conclusions do not lose their prospective influence simply because they lack formal preclusive effect. Legislatures are "presumed to enact new legislation with knowledge of judicial decisions," *Sapp v. Paul Revere Life Ins. Co.*, 28 F.3d 108 (9th Cir. 1994) (unpublished), and Montana's Legislature is no exception. An unreviewable, unvacated federal court ruling that this type of legislation violates the Constitution will inevitably shape how Montana's lawmakers assess their authority going forward—altering, at the margins and perhaps well beyond them, what the Legislature believes it is permitted to do. This is exactly the kind of prospective legal consequence that *Camreta* recognized as sufficient to warrant vacatur.

**B.** *Munsingwear* vacatur also requires that the party seeking vacatur must not have "voluntarily forfeited his legal remedy" under "the ordinary processes of appeal." *Bancorp*, 513 U.S. at 25. But Plaintiffs' suggestion that Montana forfeited its right to vacatur by agreeing to hold the appeal in abeyance is unsupported by precedent and gets the equitable analysis backwards. Montana agreed to an abeyance because the federal legislative landscape had shifted in ways that made immediate appellate review impractical—not because it had any intention of abandoning its right to challenge an adverse constitutional ruling.

Abeyances are a routine feature of appellate practice, and parties who agree to them do not thereby concede that the underlying rulings should stand forever. To hold

otherwise would create a perverse incentive, effectively penalizing parties for exercising the kind of practical judgment that courts routinely encourage. *Munsingwear* is *not* appropriate when a party settles to avoid an adverse judgment on appeal or simply fails to pursue its rights. *See Bancorp*, 513 U.S. at 25–26; *Karcher v. May*, 484 U.S. 72, 83 (1987). But Montana did neither. Instead, it agreed to hold its appeal in abeyance because the federal legislative landscape had shifted in ways that made immediate review impractical—not to avoid appellate scrutiny or to preserve an adverse ruling.

And Plaintiffs do not contest that Montana did not cause the mootness here. The mootness arose from TikTok's decision to divest its U.S.-based operations—precisely the kind of mootness "by happenstance" that this Court has recognized warrants vacatur, *see NASD Dispute Resolution, Inc. v. Judicial Council*, 488 F.3d 1065, 1068 (9th Cir. 2007), and that differs categorically from the voluntary forfeiture that *Bancorp* addressed. Agreeing to a procedural pause is not acquiescence in a judgment; Montana never stopped seeking review, and when mootness foreclosed that path through no fault of its own, it sought the remedy the law provides.

## CONCLUSION

For the reasons stated here and in the motion to vacate, the Court should both dismiss this appeal and remand with instructions to the district court to vacate its order granting a preliminary injunction.

Dated: March 23, 2026

Respectfully submitted,

*/s/ Christian B. Corrigan*

AUSTIN KNUDSEN
*Attorney General of Montana*

CHRISTIAN B. CORRIGAN
*Solicitor General of Montana*

Montana Department of Justice
215 North Sanders
P.O. Box 201401
Helena, MT 59620-1401
(406) 444-2026
christian.corrigan@mt.gov

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(g) of the Federal Rules of Appellate Procedure, Christian B. Corrigan, an employee in the Office of the Attorney General of the Montana, hereby certifies that according to the word count feature of the word processing program used to prepare this motion, the motion contains 2,535 words, and complies with the length and typeface requirements of Rules 27 and 32.

*/s/ Christian B. Corrigan*

CHRISTIAN B. CORRIGAN
*Solicitor General of Montana*